Earnest KING, Appellant,

v.

The STATE of Texas, Appellee.

No. 900–93.

Court of Criminal Appeals of Texas,
En Banc.

March 29, 1995.

Danise Crawford, Brian W. Wice, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Kimberly Aperauch Stelter & Terry Yates, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

### I.

### PROCEDURAL HISTORY

Appellant was charged by indictment with intentionally and knowingly possessing co-

caine weighing less than 28 grams by aggregate weight, including any adulterants and dilutants, on or about July 29, 1991, in Harris County. On December 17, 1991, appellant was convicted by a jury in the 178th District Court of Harris County, of possession as alleged in the indictment, and thereafter punishment was assessed at thirty-five years confinement in the Texas Department of Criminal Justice–Institutional Division. On appeal, the Fourteenth Court of Appeals reversed judgment of conviction and ordered the trial court to enter a judgment of acquittal. *King v. State,* 843 S.W.2d 155 (Tex. App.—Houston [14th Dist.] 1992). This Court vacated the judgment of the court of appeals, and remanded the cause for further consideration of other evidence noted in the State's brief which demonstrated knowledge of the character of the contraband when the substance itself was unable to be weighed. *King v. State,* 848 S.W.2d 142 (Tex.Cr.App. 1993). Upon further examination of such evidence, the court of appeals affirmed the conviction and sentence. *King v. State,* 857 S.W.2d 718 (Tex.App.—Houston [14th Dist.] 1993).

We granted appellant's petition for discretionary review. His sole ground for review states, "There was insufficient evidence that appellant knowingly possessed a controlled substance."

## II.

### SUMMARY OF PERTINENT FACTS

At approximately 12:05 p.m. on July 29, 1991, after receiving a call regarding a narcotics complaint, the Houston Police Department dispatched an officer to a local apartment complex. Upon arrival the officer observed appellant approaching him from a distance. Appellant appeared to be staggering, and as they moved closer to each other, the officer began to detect a strong odor of alcohol. At trial, the officer testified that not only was appellant staggering, he also swayed back and forth, his speech was slurred, and his eyes were glazed over. After determining that appellant was "obviously" intoxicated to the point where he could be a danger to himself or others, appellant was handcuffed and placed under arrest for pub-

lic intoxication. A search of appellant revealed a "crack pipe," an instrument used to smoke crack cocaine, in appellant's right front pants pocket. The officer then administered a field test for cocaine by scraping slivers from the "crack pipe," and placing the slivers into a solution which would result in a negative or positive reaction for cocaine. The test concluded positive and appellant was later charged with knowingly and intentionally possessing cocaine.

## III.

### COURT OF APPEALS HOLDING

After remand from this Court, the court of appeals held that the evidence was sufficient to prove that appellant knew that the substance in his possession was a controlled substance because the cocaine was visible in the "crack pipe" recovered from appellant's right front pants pocket, and the "crack pipe" was still damp with saliva when recovered. *King v. State,* 857 S.W.2d at 720.

## IV.

### APPELLANT'S CLAIM

Appellant claims that because the State relied upon an unweighable amount of cocaine to prove that he knowingly possessed the controlled substance, and because the State failed to prove the required mens rea element of the offense beyond a reasonable doubt, the evidence was insufficient to conclude that he knowingly possessed the controlled substance. He therefore avers that the court of appeals erred in holding that the evidence presented by the State was sufficient to prove appellant's knowing possession of cocaine.

## V.

### STATE'S CONTENTION

The State contends that there was indeed sufficient evidence to support the conviction because there is no minimum weight required to sustain a conviction for possession of a controlled substance, and even if the quantity is too minute to be measured or seen, other evidence can prove that the de-

fendant knew the substance in his possession was a controlled substance.

## VI.

### ANALYSIS

■■■ As with all elements of a criminal offense, the State must prove the mens rea element beyond a reasonable doubt. *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Cr. App.1987). In reviewing appellant's claim of insufficient evidence, we must determine not only whether appellant had possession of the controlled substance, but also whether appellant had knowledge of the possession. *Mendoza v. State,* 636 S.W.2d 198, 200 (Tex.Cr. App.1982); *Shults v. State,* 575 S.W.2d 29, 30 (Tex.Cr.App.1979). The standard of review on appeal is the same for both direct and circumstantial evidence. *McGoldrick v. State,* 682 S.W.2d 573, 577 (Tex.Cr.App.1985). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Cr.App.1984). In order for the State to meet its burden, and establish that the evidence was sufficient to support a verdict of guilt, it must meet two evidentiary requirements: first, the State must prove that appellant exercised actual care, control and management over the contraband; and second, that appellant had knowledge that the substance in his possession was contraband. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Cr. App.1988); *Herrera v. State,* 561 S.W.2d 175, 179 (Tex.Cr.App.1978).

■■■ After the arrest, the "crack pipe" found on appellant's person was submitted to the Houston Police Department's narcotics laboratory for further tests. At trial, the police chemist, who administered the tests, testified that four types of chemical analyses were performed on the residue found in the "crack pipe," and that these tests revealed that there was a positive presence of cocaine within the residue. The chemist testified, "There was a visible residue in the pipe to the naked eye." The chemist also testified, "[T]he amount of cocaine present ... was small enough where we could not determine the amount." Because the amount of cocaine was too small to be measured, this Court's language in *Shults v. State, supra,* is controlling. *Shults* holds that "when the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults v. State,* 575 S.W.2d at 30. Therefore, the State must prove, through other evidence, that appellant had knowledge that the substance in his possession was cocaine.

The State contends that because cocaine was visible in the "crack pipe," and because the "crack pipe" was damp with "saliva" when recovered, such was sufficient proof that appellant knowingly possessed cocaine. Since in the instant cause the cocaine in question is of a microscopic and unweighable amount, we are required to look at other facts to determine whether a reasonable trier of fact could have found beyond a reasonable doubt that appellant knowingly possessed cocaine. After reviewing the record, we find that there is evidence to support the State's assertion and the court of appeals' finding.

The arresting officer testified as to appellant's state of mind and behavior the day of the arrest. According to the officer, "His speech was slurred, he was very incoherent that he didn't really know what was going on was going on.... He was like he was in another world.... Glazed eyes, he was staggering, swaying back and forth." Believing appellant was intoxicated to a degree that he could possibly harm himself, the officer placed him under arrest. During a routine search of appellant, the officer testified that he found the "crack pipe" in appellant's front pants pocket and that it had a residue inside of it and was damp with what appeared to be saliva. At the station house, the officer did a field test on the pipe which indicated the presence of cocaine. Later tests by a police chemist confirmed this result.

The facts of *Shults v. State, supra,* must be distinguished from the case at hand. The defendant in *Shults* was arrested for posses-

sion of a controlled substance after a balloon with a trace amount of heroin was found in her mouth. The State proved only that she possessed heroin, not that she knowingly did so. This Court held that the State must present evidence other than mere possession to prove that the defendant knew the substance in her possession was contraband. *Shults v. State*, 575 S.W.2d at 30. There were no other circumstances surrounding her arrest which could have shown knowledge of possession. Therefore, this Court reversed her conviction because of the insufficiency of the evidence.

In the instant cause, the rule of law in *Shults v. State* is controlling. However, there is other evidence here which shows that appellant knowingly possessed a controlled substance. The fact that the pipe found on appellant's body had a residue containing cocaine inside of it shows that the pipe had been used to smoke cocaine in the past. The fact that the stem of the pipe was still moist with what appeared to be saliva shows that the pipe-smoking was probably in the very recent past. Although the amount of cocaine was unmeasurable, unweighable, and invisible, the residue containing the cocaine was visible on the "crack pipe." Additionally, appellant's behavior at the time of the arrest shows that he was obviously under the influence of something and, in the arresting officer's opinion, that he was intoxicated to a degree that he could have been harmful to himself. Taking all of these factors into account, we find that the evidence is sufficient to sustain the conviction.

## VII.

### CONCLUSION

After reviewing the evidence in the light most favorable to the prosecution, we are able to conclude that any rational trier of fact could have found that the State proved the essential elements of the offense beyond a reasonable doubt, that is, that appellant knowingly possessed cocaine. Accordingly, the judgment of the court of appeals is affirmed.

CLINTON, Judge, concurring.

A question lurking about is whether *as a matter of law* the substance itself must be visible to the naked eye for a factfinder to conclude that an accused "knew" the substance possessed is that which is alleged. Stated in terms of this cause, must the State establish that *visible* powdery or other form of cocaine was on, or mingled with residue of burned material in, a crack pipe?[1]

1. Early on, the Court seems to have resolved the issue of "knowing possession" on a factual basis, case-by-case, guided at first by a notion that the substance seized must be a "useable amount." See, e.g., *Greer v. State*, 163 Tex.Cr.R. 377, 292 S.W.2d 122 (1956) (former narcotic act does not authorize conviction for possessing small piece of wet cotton containing trace of heroin); *Pelham v. State*, 164 Tex.Cr.R. 226, 298 S.W.2d 171, 173 (1957) (amount of marijuana must be capable of being applied to common usage; conclusion consistent with holding in *Greer*, supra; "harsh rule, indeed that would charge appellant with knowingly possessing that which it required a microscope to identify)"; *Tomlin v. State*, 170 Tex.Cr.R. 108, 338 S.W.2d 735, 737 (1960) (evidence of *visible* residue on spoon, eye-dropper and needle, as well as particles of power on cellophane paper, aggregating 1700 micrograms equivalent to one capsule of 3% heroin *not insufficient* under *Pelham* and *Greer*, supra); *Coleman v. State*, 545 S.W.2d 831, 835 (Tex.Cr.App.1977) (declining to adopt "harsh rule" where unweighable trace of cocaine estimated from ½8000 to ⁷⁄128000 of an ounce); *Kent v. State*, 562 S.W.2d 855 (Tex.Cr.App.1978) (3.2 milligrams of cocaine, about twice weight of heroin in *Tomlin*, supra, sufficient to sustain finding of possessing cocaine).

   Later, under the Controlled Substances Act, the Court discerned that while a minimal amount of marihuana must be a usable quantity, the minimum quantity of any other controlled substance to sustain a conviction is not specified. *Daniels v. State*, 574 S.W.2d 127, 128 (Tex.Cr.App.1978); *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Cr.App.1993). And the Court continued to recognize and acknowledge that the amount must be large enough to be measured quantitatively in order to show that an accused knowingly possessed the substance as alleged. *Ibid.* Building on that basis the Court soon held, "When the quantity of a substance possessed is so small that it cannot by qualitatively measured, there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults v. State*, 575 S.W.2d 29 (Tex.Cr.App.1979).

   This Court never resolved the question of "visibility" of "residue" qua "ash" versus "residue" qua "substance" in determining sufficient evidence for finding "knowing possession." See *Johnson v. State*, supra, at 627; cf. *Tomlin v.*

The Court may not assume the law requires the State to prove that an accused "knows the residue remaining in his pipe was cocaine;" it requires the State to prove only that the accused "knowingly possessed cocaine" as charged in the indictment. As is true in most cases, "knowing possession" must usually be shown circumstantially, e.g., *Arnott v. State*, 498 S.W.2d 166, 177 (Tex.Cr. App.1973), and here all the facts and circumstances outlined in the various opinions are sufficient to permit a rational factfinder to draw reasonable inferences leading to the conclusion that appellant knew the "crack pipe" he possessed contained cocaine and its "residue." [2]

In the instant cause the "rule of thumb" developed below, see n. 2 *ante*, is not applicable because, as all seem to acknowledge, the weight of the substance in the pipe could not be quantitatively measured. *King v. State*, 857 S.W.2d 718, 720 (Tex.App.—Houston [14th] 1933).[3] Thus, there must be some relevant evidence other than mere possession of the "crack pipe" to prove that appellant knew the substance in the pipe was cocaine. *Shults v. State* and *Daniels v. State*, both supra, n. 1 *ante*. The court of appeals factually found just such other evidence, i.e., cocaine was visible in a crack pipe and was still damp with saliva; that is sufficient to support its ultimate conclusion that appellant

*State*, supra, 338 S.W.2d at 737. But other courts came to regard the matter as at least germane. See note 2, *post*.

All emphasis is mine throughout unless otherwise noted.

2. Harris County prosecutes so many cases presenting only minor variations on the scenario played out in the instant cause that, as here, both courts of appeals recite applicable law and evidentiary support meeting it almost by rote. See, e.g., *Jenkins v. State*, 870 S.W.2d 626 (Tex.App.—Houston [1st] 1994), no PDR, *viz:*

"In order to establish the unlawful possession of a controlled substance, the State is required to prove: (1) the accused exercised care, custody and control over the contraband, and (2) the accused knew the matter possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387, Tex.Cr.App.1988). The issue is whether the evidence will support a reasonable inference that the defendant knowingly possessed the contraband. *Jackson v. State*, 807 S.W.2d 387, 389 (Houston [14th] Dist.1991, pet. ref'd).

The tube containing cocaine was found by [named detective] in appellant's right, front, pants pocket. *See* [two cases involving similarly situated defendants].

Secondly, both the detectives and the chemist observed a white powdery residue inside the tube. *See* [four cases involving observations of, respectively, 'observed residue in cocaine pipe with the naked eye,' 'cocaine residue,' 'residue inside crack pipe,' and 'cocaine residue visible to the naked eye'].

Finally, the police department chemist measured the cocaine at .33 milligrams. Similar amounts have been found sufficient to support a conviction. *See* [cases finding 0.2, 0.8 and 2 milligrams, respectively]."

*Id.*, at 628. Without expressly stating it, the *Jenkins* court did apply the local "rule of thumb" evolved in that jurisdiction, *viz:* "If the controlled substance can be *seen and measured*, the amount is sufficient to establish the defendant

knew it was a controlled substance." See and compare: *Dickerson v. State*, 866 S.W.2d 696, 699–700 (Tex.App.—Houston [1st] 1993) no PDR; *Ortega v. State*, 861 S.W.2d 91, 95 (Tex. App.—Houston [14th] 1993), no PDR; *Daniels v. State*, 853 S.W.2d 749 (Tex.App.—Houston [1st] 1993) (testimony of chemist that quantity of cocaine in crack pipe *"would be visible* to the naked eye" rendered testimony of actual sighting unnecessary, "the evidence of visibility is enough to convict"), no PDR; *Johnson v. State*, 843 S.W.2d 238, 239–240 (Tex.App.—Houston [14th] 1992), PDR ref'd; *Sims v. State*, 833 S.W.2d 281, 283–284 (Tex.App.—Houston [14th] 1992), no PDR; *Mayes v. State*, 831 S.W.2d 5, 6 (Tex. App.—Houston [1st] 1992), no PDR; *Campbell v. State*, 822 S.W.2d 776 (Tex.App.—Houston [14th] 1992), (although lab analysis of content of matchbox showed 0.6 milligrams of cocaine, lack of any testimony that "cocaine residue" therein was "visible to the naked eye" required order of acquittal), PDR ref'd. *Jarrett v. State*, 818 S.W.2d 847, 848 (Tex.App.—Houston [1st] 1991), no PDR; *Thomas v. State*, 807 S.W.2d 786, 789 (Tex.App.—Houston [1st] 1991) ("If the controlled substance can be *seen and measured*, we conclude that the amount is sufficient to establish that the defendant knew it was a controlled substance," citing *Shults v. State*, supra, note 1, *ante*) (judgment reversed on other grounds), PDR dismissed as improvidently granted, 840 S.W.2d 958 (Tex.Cr.App.1992); *Manuel v. State*, 782 S.W.2d 335 (Tex.App.—Houston [1st] 1989), PDR ref'd; *Chavez v. State*, 768 S.W.2d 366, 367–368 (Tex.App.—Houston [14th] 1989), PDR ref'd; *Alejandro v. State*, 725 S.W.2d 510, 514–515 (Tex. App.—Houston [1st] 1987), no PDR.

3. The court of appeals noted: "There was also enough cocaine present to conduct four chemical tests. All indicated the presence of cocaine." *King*, supra, at 720. But the rule requires "quantitative measurement" for which by definition "qualitative tests" cannot serve as a substitute.

knew the substance in his possession was cocaine. *King*, supra, at 720.

The courts of appeals are responsible for the resolution of factual disputes, and in exercising the reviewing function of this Court we must "decline to substitute our own judgment on ultimate questions of fact for that of the lower court." *Arcila v. State*, 834 S.W.2d 357, 360–361 (Tex.Cr.App.1992).

Nonetheless, we granted review to examine competing contentions of the parties concerning the status of "visibility" of a controlled substance as a factor in determining "knowing possession." The Court includes among germane inculpatory circumstances that the *"residue* containing the cocaine was *visible* on the 'crack pipe,' " although the actual cocaine was "unmeasurable, unweighable and *invisible.*" Maj. opinion, at 704. Thus to my satisfaction the Court is implicitly concluding as a matter of law that the State need not establish "visibility" of powdery or other form of cocaine itself to enable the jury to find "knowing possession" of that controlled substance and, therefore, to conclude that the State proved the essential elements of the offense alleged beyond a reasonable doubt.

With that understanding, I join the judgment of the Court.

McCORMICK, P.J., and MANSFIELD, J., join in this opinion.

BAIRD, Judge, concurring.

Under *Daniels v. State*, 574 S.W.2d 127, 128–129 (Tex.Cr.App.1978), and *Shults v. State*, 575 S.W.2d 29, 30 (Tex.Cr.App.1979), when the amount of the controlled substance is so small that it cannot be quantitatively measured or seen with the naked eye, the State bears the burden of producing other evidence which will demonstrate, beyond a reasonable doubt, the defendant *knowingly* possessed the substance. Additionally, evidence of mere possession of the substance is insufficient, *Shults*, 575 S.W.2d at 30, as is simple possession of the container in which

the trace substance was found. *Garner v. State*, 848 S.W.2d 799 (Tex.App.—Corpus Christi 1993).

Under this standard of review, I believe the evidence is sufficient to demonstrate appellant *knowingly* possessed cocaine because the State introduced evidence appellant appeared intoxicated, there was residue in the crack pipe, and the mouthpiece on the crack pipe was wet (as if recently used). From these circumstances, a rational trier of fact could conclude appellant knowingly possessed the controlled substance.

With these comments, I join the majority opinion.

MALONEY, Judge, dissenting.

Believing it to be in contravention of the intended statutory proscription to sustain a conviction for knowing possession of a controlled substance where its quantity is so small that it is impossible to measure even with the most sophisticated of scientific devices and there is no evidence that the substance could be seen with the naked eye, I dissent.

Appellant was convicted for the knowing possession of less than twenty-eight grams of cocaine found inside a crack pipe which was removed from his front pocket. There is an absence of evidence that any cocaine was visible in the pipe. The repeated testimony as to the contents of the pipe is that "residue" was visible. Yet, the only explanation of "residue" given by any witness is that it is a combination of "like spit and stuff like that." The State's chemist was asked specifically whether cocaine was visible inside the pipe:

A. There was a visible residue in the pipe to the naked eye. That's all I can say.

He gave no explanation as to what a "visible residue" was or whether cocaine was a visibly identifiable element of the "visible residue." He further testified that the quantity of cocaine within the residue was so small that it was impossible to measure.[1]

[Defense attorney]. Does [the ultraviolet spectrophotometry test] give you the weight or the contents, the amount of contents of maybe coke that was present?

---

1. The testimony at trial revealed that the amount of cocaine was too small to measure even with the sophisticated testing mechanisms used to determine the chemical content of the substance:

The scenario presented in the instant case is not new. For nearly forty years this Court has addressed possession cases in which the amount of the substance was too small to be seen or measured. *See Pelham v. State,* 298 S.W.2d 171 (Tex.Crim.App. 1957); *Greer v. State,* 163 Tex.Crim. 377, 292 S.W.2d 122 (1956). In *Pelham,* we held that the amount of substance possessed must be enough for use, or at least enough to see with the naked eye. There, with the aid of a microscope, the chemist was able to determine that scrapings taken from the defendant's pants pocket contained particles of marijuana; however, he was unable to express any opinion as to the amount or weight of marijuana present. *Pelham,* 298 S.W.2d at 172. This Court refused to uphold the conviction for unlawful possession, holding that the amount possessed must be "sufficient to be applied to the use commonly made thereof." *Id.* at 173.[2] We further stated that

> Note is taken of the fact that it was only by the use of a microscope that the chemist was able to determine the presence of marijuana in the dustings which were scraped from the lining of appellant's pocket. *It would be a harsh rule indeed, that would charge appellant with knowingly possessing that which it required a microscope to identify.*

*Id.* (emphasis added). Our holding in *Pelham* was consistent with our previous opinion in *Greer,* where this Court refused to uphold a conviction for unlawful possession of heroin on the basis of "a small piece of wet cotton containing a trace of a narcotic such as may have been wiped from a needle following an injection." *Greer,* 292 S.W.2d at 122. In neither *Pelham* nor *Greer* was the controlled substance visible to the naked eye. After *Pelham* and *Greer* this Court has consistently held that knowing possession was shown where the substance could be seen and measured, but not where it could neither be seen nor measured. *Compare Coleman v. State,* 545 S.W.2d 831 (Tex.Crim.App.1977) (declining to uphold conviction for knowing possession where substance could only be identified with microscope, citing *Pelham* ) *with Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim. App.1983) (upholding conviction for possession of methamphetamine where substance could be "quantitatively measured" and "could be seen without the aid of a microscope") *and Tomlin v. State,* 170 Tex.Crim. 108, 338 S.W.2d 735 (1960) (upholding conviction under circumstances where heroin collected measured 1700 micrograms and appeared as "a white substance" or "white powder").

We have recognized, however, that a conviction for knowing possession of a minute amount of a controlled substance may be sustained where the defendant admitted he knew that he possessed a controlled substance. In *Cantu v. State,* 546 S.W.2d 621, 622 (Tex.Crim.App.1977), this Court held the evidence sufficient to show knowing possession of a "trace" of heroin where the defendant voluntarily pled guilty to knowing possession, stipulated to the evidence and admitted the allegations in the indictment were

---

[Chemist]. In many cases we can determine the weight from the numbers that we get from the ultraviolet spectrophotometer.
Q. Do you remember the numbers that were produced when you ran that test?
A. Yes.
Q. Could you tell the jury.
A. Sure. These are actually absorbant numbers. I'm sorry. Let me correct myself. In this case I was not able to determine the weight. It was such a small amount. So in this case the actual absorbants aren't actually recorded.
Q. What do you mean by you could not determine the weight?
A. In cases that we encounter sometimes there is such a small amount or the sample contains adulterants that prevents us from using that test to determine the weight.

Q. And you're telling the jury that you understand the ultraviolet spectrophotometry test, there is no possible numbering grams, milligrams, micrograms that you could tell us that was contained in that pipe?
A. No, it was not possible to determine the weight.
The chemist also testified that it was not possible to determine weight from the two other types of tests that were conducted.

2. We subsequently did away with the "usable amount" standard. *Cantu v. State,* 546 S.W.2d 621, 622 (Tex.Crim.App.1977) ("usable amount" need not be shown to sustain a conviction for possession under Controlled Substances Act).

true and correct. *Id.* Similar reasoning was applied in the sale and delivery context. In *Reyes v. State,* 480 S.W.2d 373, 374–75 (Tex. Crim.App.1972), we held that where the defendant represented that he was selling narcotics and the substance he was selling was subsequently found to contain narcotics, the evidence was sufficient to show knowledge for purposes of an unlawful sale conviction.

In my view we erroneously relied on *Cantu* and *Reyes* in *Daniels v. State,* 574 S.W.2d 127 (Tex.Crim.App.1978), in holding for the first time that other evidence might be used to prove knowledge for purposes of possession where the quantity of the substance was too small to be measured. In *Daniels,* the substance at issue was identified by chemical analysis as cocaine; however, it was "neither a quantity that could be quantitatively measured nor a quantity for which a pharmacological effect could be obtained." *Id.* at 128. We stated that

> when the quantity of a substance possessed is so small that it cannot be quantitatively measured there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance.

*Id.* We reversed and remanded for a new trial since the State had relied upon circumstantial evidence to show knowing possession,[3] and under the circumstantial evidence law then but not now in existence the jury should have been but had not been instructed on the law pertaining to circumstantial evidence.[4]

This rule announced in *Daniels,* however, was cited in *Shults v. State,* 575 S.W.2d 29 (Tex.Crim.App.1979), relied upon by the majority in the instant case. In *Shults,* a balloon was found in the defendant's mouth during a search conducted while she was visiting a friend in the county jail. Chemical analysis revealed that the balloon contained "a small amount of marijuana and a trace of heroin." *Id.* at 30. The defendant was charged with possession of heroin and stipulated that a chemist if called to testify would testify that he determined that the substance found inside the balloon was heroin, and that it was an amount too small to be measured. While the defendant admitted to knowing possession of the marijuana, she claimed she had not known the balloon also contained heroin. Citing the rule announced in *Daniels* that when the controlled substance possessed is too small to be quantitatively measured, there must be other evidence to prove knowing possession, we concluded that although the State had proven that the defendant possessed the heroin, it had not proven that she *knew* she possessed it. *Id.*

Given that the cases relied upon by the Court in *Daniels* did not support the rule announced therein, and given that the rule has not been utilized by this Court to sustain a conviction for knowing possession in the absence of an affirmative statement or confession by the defendant indicating knowledge, I believe we should reexamine the soundness of the *Daniels* rule before applying it for the first time to affirm a conviction.

The rules set forth in *Pelham* and *Greer,* as modified by *Cantu,* make sense and are solid law. While no minimum amount need be possessed under the Controlled Substances Act, the State must prove that the defendant "knowingly or intentionally" possessed the substance.[5] In view of the evidence that the amount of the substance was too minute to be measured, and absent evidence that cocaine was visible inside the pipe, the rules set forth in *Greer* and *Pelham* apply. I would hold there is no evidence to support appellant's conviction for knowing

---

3. The circumstantial evidence relied upon by the State in an effort to show knowing possession included "other controlled substances, narcotic paraphernalia, and methapyriline, which is an agent sometimes used to 'cut' cocaine" found on the premises. *Id.* at 129.

4. *Daniels* was decided prior to the abolition of the circumstantial evidence charge in *Hankins v. State,* 646 S.W.2d 191 (Tex.Crim.App.1981).

Considering the fact that the law of circumstantial evidence with its protections is no longer viable, the rule announced in *Daniels* is open to question on that score alone.

5. Without deciding the merits of such, it seems to me that the State would have been more prudent to have charged appellant with possession of drug paraphernalia. Tex Health & Safety Code Ann. § 481.125 (Vernon 1992).

possession of cocaine weighing less than 28 grams.

MEYERS, Judge, dissenting.

Because jurisdiction is fundamental, appellate courts are obliged to assure that they have jurisdiction of a case before proceeding to adjudicate it, whether prompted by the parties to do so or not. If it appears to the court that it does not have jurisdiction, then it may not consider the merits of the appeal, but must dismiss the case without further elaboration. *Primrose v. State,* 725 S.W.2d 254 (Tex.Crim.App.1987); *Jacolos v. State,* 692 S.W.2d 724 (Tex.Crim.App.1985); *Thompson v. State,* 626 S.W.2d 750 (Tex. Crim.App.1981); *McDougal v. State,* 610 S.W.2d 509 (Tex.Crim.App.1981); *Welch v. McDougal,* 876 S.W.2d 218, 220 (Tex.App.— Amarillo 1994); *Fandey v. Lee,* 876 S.W.2d 458, 459 (Tex.App.—El Paso 1994); *H.E. Butt Grocery Co. v. Bay, Inc.,* 808 S.W.2d 678, 679 (Tex.App.—Corpus Christi 1991).

We do not have jurisdiction of this case.* It is the law in this State that "decision[s] of [the courts of appeals] shall be conclusive on all question of fact brought before them on appeal or error." Tex. Const. art. V, § 6. Before 1981, this so-called "factual conclusivity" clause was irrelevant to the jurisdiction of this Court, since we did not review decisions of the courts of appeals at all. Rather, we addressed evidentiary issues only on direct appeal of criminal convictions and, at least in the years immediately preceding the advent of discretionary review, generally set aside a factfinding of the trial judge or jury only if there was no evidence of probative value to support it. Although this Court often described evidence as insufficient under

such circumstances, it was usually clear that the standard employed was one of legal sufficiency, or no evidence, and not a factual sufficiency review, such as was common in the courts of civil appeals. *See Gold v. State,* 736 S.W.2d 685, 697 (Tex.Crim.App.1987) (Teague, J., dissenting).

This perspective not only simplified the appellate process, but was wholly consistent with the requirements of due process in criminal cases. *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). In 1979, however, the United States Supreme Court decided that the "no evidence rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt," and expressly abandoned it in favor of the rule that criminal convictions violate due process of law unless supported by "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 312–13, 99 S.Ct. 2781, 2785–86, 61 L.Ed.2d 560 (internal quotation marks omitted).

For many years after *Jackson,* and in spite of its clear holding to the contrary, this Court continued to insist that a judgment of conviction should be "sustained if there is *any* evidence which, if believed, shows the guilt of the accused." *Combs v. State,* 643 S.W.2d 709, 716 (Tex.Crim.App.1982), quoting from *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Crim.App.1974) (emphasis added). Eventually, we realized that this method was mistaken and expressly repudiated it.

Adherence to the no evidence standard is now, and has been for the last decade, expressly forbidden by *Jackson.* It is no

---

* Judge Clinton evidently recognizes that there is a jurisdictional problem here. Consequently, he is eager to claim that the Court's opinion "implicitly conclud[es] as a matter of law that the State need not establish "visibility" of powdery cocaine itself to enable the jury to find "knowing possession" of that controlled substance[.]" Op. at 706. Certainly, as an empirical matter, visibility need not be established to prove knowing possession. But I do not understand what Judge Clinton means when he says that the Court reached this conclusion "as a matter of law" unless it is his position that factfindings become matters of law whenever a court makes them. We granted appellant's petition for discretionary

review in this case to decide whether "there was sufficient evidence that appellant possessed a controlled substance[,]" Court's Op. at 702, not to debate whether "visibility" is an element of cocaine possession under the Controlled Substances Act. If such an argument were actually involved here, I would join Judge Clinton's opinion, of course. But no one has ever contended, nor would anyone ever contend, that "visibility" is a statutory element of the offense. Accordingly, no questions of law are presented by appellant's petition and, Judge Clinton to the contrary notwithstanding, none have been resolved by the Court.

longer permissible to merely quote the *Jackson* standard and then to turn around and apply the *Thompson* no evidence standard as we have historically done. Therefore, we expressly overrule that part of *Combs,* that relied upon the no evidence language quoted from *Banks* [.]

*Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989).

Nowadays, when we are called upon to determine whether evidence adduced at trial is sufficient to support a conviction under the test enunciated by the United States Supreme Court in *Jackson,* we no longer affirm the conviction upon a finding that there is any evidence in the record to support it. In short, we now officially accept that the kind of appellate review which we routinely perform in evaluating the sufficiency of evidence is not governed by a no-evidence standard.

> It follows from this that a reviewing court cannot avoid assessing the weight and credibility of evidence adduced at trial, not to reach a subjective judgment of its implications, but to determine whether a known subjective judgment of the institutional factfinder was rational. This constitutes appellate review of the facts.

*Gold,* 736 S.W.2d at 693 (Teague, J., dissenting).

In spite of this belated realization, we have yet failed to appreciate its effect upon the appellate relationship between this Court and the courts of appeals. This is particularly surprising given our recent acknowledgement, after years of irrational resistance, that the "factual conclusivity" clause applies to the appellate review of criminal convictions just as it does to the appellate review of civil judgments. *Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990). In both contexts the distinction between law and fact precisely defines those questions upon which decisions of the intermediate appellate courts are final. Questions of fact, if reviewable by the courts of appeals at all, are reviewable only by those courts. Questions of law are ultimately reviewable by the Texas Supreme Court in civil cases and by this Court in criminal cases. Accordingly, whether this Court has authority to address an issue on discretionary review depends essentially upon whether the issue is one of fact or of law.

When it comes to the review of evidence on appeal, it has long been held by the Texas Supreme Court that evidence is insufficient as a matter of law to support an affirmative finding of an issue only when the record contains no evidence whatsoever tending to prove that issue. In short, legal insufficiency is determined solely by application of the no-evidence standard.

*Electric Express & Baggage Co. v. Ablon,* 110 Tex. 235, 218 S.W. 1030 (1920), is an early opinion illustrating this proposition. There the Texas Supreme Court was called upon to review the decision of a court of appeals reversing the judgment of a district court and remanding for a new trial because the evidence was insufficient to support the jury's finding upon an issue of contributory negligence. Although urged to hold that the question of sufficiency had been waived by appellant's acquiescence in the submission of a jury issue at trial, the Supreme Court nevertheless declined to disturb the lower appellate court's decision. Its explanation, based upon propositions of law which were considered well-settled even in 1920, sets out rudimentary principles of evidentiary review which are now fundamental to the appellate relationship between this Court and the Texas courts of appeals.

> Whether there is *any evidence* in support of a finding or verdict of the jury is, purely and simply, *a question of law.* But, where there is *some evidence* to support a finding or verdict of the jury, the question whether it is *sufficient,* in the estimation of the trial court or the Court of Civil Appeals, to support such a finding or verdict, is *a question of fact,* and not one of law. [citations omitted]

> · · · · ·

> Moreover, when, as in this case, the decision and judgment of the Court of Civil Appeals upon the facts no [sic] not turn upon a question purely of law, they are final, in the sense that they are not subject to review by this Court.

*Ablon,* 213 S.W. at 1031–32 (emphasis in original).

This method of distinguishing between questions of law and questions of fact for purposes of appellate review is so firmly settled in the jurisprudence of Texas that it has not been subject to serious debate in the courts for nearly a hundred years. At least as early as 1898, our Supreme Court established that any appellate evaluation of evidentiary sufficiency not employing the no-evidence standard presents a question of fact under the Texas Constitution. *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898). The Court has adhered to this position ever since, although there has been considerable disagreement in recent years about nuances of the review process itself. *E.g., In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex.1988); *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384 (Tex.1989). *See also* Calvert, *'No Evidence' and 'Insufficient Evidence' Points of Error*, 38 Tex.L.Rev. 361 (1960). Nevertheless, application of these basic precepts has been remarkably consistent in the courts of appeals. As one such court recently wrote:

> When reviewing a legal sufficiency challenge, we consider only the evidence and inferences that supported the challenged jury finding, and disregard all contrary evidence and inferences. If there is any evidence of probative force to support the finding, the point of error must be overruled and the finding upheld.
>
> In reviewing the record for factual sufficiency, this Court must examine all the evidence, and, having considered and weighed all of the evidence, should set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

*Virani v. Syal*, 836 S.W.2d 749, 750–51 (Tex. App.—Houston [1st Dist.] 1992) (citations omitted).

The latter standard is strikingly analogous to that prescribed by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In both instances, the issue is not whether any evidence can be found to support the verdict, but whether the "evidence is so weak ... that it [would be] clearly wrong and unjust" to uphold the verdict. As the Supreme Court emphasized in *Jackson,*

> A mere modicum of evidence may satisfy a no evidence standard. Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence—could be deemed a mere modicum. But it could not seriously be argued that such a modicum of evidence could itself rationally support a conviction beyond a reasonable doubt.

443 U.S. at 320, 99 S.Ct. at 2789 (internal quotation marks, citations, and ellipses omitted).

Our own case law most clearly recognizes this distinction when it comes to applications for habeas corpus relief, where we routinely refuse to entertain sufficiency claims but willingly take cognizance of no-evidence complaints. *Ex parte McLain*, 869 S.W.2d 349 (Tex.Crim.App.1994); *Ex parte Williams*, 703 S.W.2d 674 (Tex.Crim.App.1986). Yet it is our habit virtually to ignore this difference in the day-to-day exercise of our discretionary review function. And it is not simply that no one has yet raised the issue. Every court has an obligation to notice on its own whether a pending case falls within its jurisdiction and to dismiss those which do not. Even if this were not so, it is at least clear from our case law that the problem was recognized by this Court as recently as 1990 in *Arcila v. State*, 834 S.W.2d 357, 360 n. 2 (Tex.Crim.App.1992), which opinion specifically reserved the question whether we had authority to review decisions of the intermediate appellate courts on questions involving the sufficiency of evidence.

It is well past the time we should have addressed this issue squarely. The sufficiency of evidence to support conviction is, as the Texas Supreme Court and courts of appeals have repeatedly held, always a question of fact for purposes of Texas constitutional law. The same is true whether the standard of review is that required by the Due Process Clause of the United States Constitution or an analogous model imposed by the decisional law of Texas courts. So long as the appli-

cable criterion is not legal sufficiency, or no-evidence, the courts of appeals are the final arbiters of evidentiary sufficiency in the State of Texas.

By ignoring this jurisdictional impediment in the discharge of our discretionary review function, we imperil indefinitely the finality of convictions in which we have reversed the decision of an intermediate appellate court holding the evidence insufficient to sustain conviction. We should have learned this lesson recently in *Ex parte Schuessler*, 846 S.W.2d 850 (Tex.Crim.App.1993), where, in a post-conviction habeas corpus proceeding, we were constrained to declare one of our own final judgments to be void upon just such a basis. Like considerations, of course, attend our review of lower court decisions holding the evidence of guilt to be constitutionally sufficient for conviction.

The instant cause is a good example. The Fourteenth Court of Appeals in Houston affirmed the judgment of conviction because it found the evidence to be constitutionally sufficient for a rational conclusion that appellant knew the substance he possessed was cocaine. *King v. State*, 857 S.W.2d 718 (Tex.App.—Houston [14th Dist.] 1993). As usual, without pausing to consider whether the Texas Constitution permits further appellate review of such a conclusion, this Court unabashedly declares that "[w]e granted appellant's petition for discretionary review [to determine whether] ... [t]here was insufficient evidence that appellant knowingly possessed a controlled substance." Maj. Op. at 702. The Court then proceeds to review the evidence, concluding that "any rational trier of fact could have found that the State proved the essential elements of the offense beyond reasonable doubt, that is, that appellant knowingly possessed cocaine." Maj. Op. at 704.

With all due respect to my learned colleagues, it is apparent that they are not reviewing the decision of the Court of Appeals upon any point of law. Instead, it is plain they are simply redoing a sufficiency analysis already done by the lower court that the evidence of appellant's guilty knowledge was strong enough or persuasive enough to justify a criminal conviction. Because of

their obvious eagerness to have the last word on this subject, they have again overlooked the fact that they have no lawful power to review the Court of Appeals on a question of fact. After thirteen years of misdirection, we should finally put the matter right. Perhaps it is not too late to confess that the Emperor has no clothes, even though he has been parading about naked for a very long time.

Appellant's petition for discretionary review should be dismissed for want of jurisdiction.