Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# DISSENTING OPINION

No. 04-07-00303-CR

Melissa Ann **FULCHER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. BACR-05-004
Honorable David A. Berchelmann Jr., Judge Presiding

Opinion by: Karen Angelini, Justice
Dissenting opinion by: Steven C. Hilbig, Justice

Sitting:     Catherine Stone, Justice
             Karen Angelini, Justice
             Steven C. Hilbig, Justice

Delivered and Filed:   August 6, 2008

To convict Melissa Ann Fulcher of possession of methamphetamine, the State was required to prove she intentionally and knowingly possessed methamphetamine. During her trial, Fulcher did not contest that a trace amount of methamphetamine was found on two items seized from her truck: a mirror found in the glove box and a broken light bulb found in a blue canvas bag in the back of her vehicle. However, Fulcher disputed that she knowingly possessed the two items. Essentially, her position at trial was she did not intentionally or knowingly possess any item that contained a controlled substance. The trial court's failure to instruct the jury that the State was

required to prove beyond a reasonable doubt a knowing or intentional possession of methamphetamine thus "vitally affected" Fulcher's only defensive theory. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). Because the majority holds Fulcher did not suffer egregious harm as a result of the trial court's failure to include a *mens rea* in the application paragraph of the court's charge, I respectfully dissent.

As the majority opinion correctly states, unpreserved jury charge error is reversible only if the resulting harm is "egregious"; that is, if the error in the charge "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In determining whether there was egregious harm, the reviewing court must consider the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, counsels' arguments to the jury, and any other relevant information revealed by the record of the trial as a whole. *Id.*; *Sanchez*, 209 S.W.3d at 121. I review each in turn.

### *The Jury Charge*

The jury charge stated in relevant part:

> The defendant, Melissa Ann Fulcher, stands charged by indictment with the offense of possession of a controlled substance, to wit, methamphetamine, in the amount of less than one gram, alleged to have been committed on or about the 16th day of September, 2004, in Bandera County, Texas. The defendant has pleaded "not guilty."

> I.
> Our law provides that a person commits an offense if, she intentionally or knowingly possesses a controlled substance. Under our law, methamphetamine is a controlled substance.

> II.

> *Possession* means actual care, custody, control, or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control.

[definition of "adulterant or dilutant" omitted]

### III.

A person acts intentionally, or with intent, with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of her conduct when she is aware of the nature of her conduct or to the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

### IV.

Now if you find from the evidence beyond a reasonable doubt that on or about the 16th day of September, 2004, in Bandera County, Texas, the defendant, Melissa Ann Fulcher, did then and there possess a controlled substance, to wit: methamphetamine in an amount of less than one (1) gram, then you will find the defendant guilty as charged.

The majority concludes the charge "sufficiently informed the jury of the mental state required for commission of the charged offense." *Fulcher v. State*, No. 04-07-00303-CR, slip op. at 8 (Tex. App.–San Antonio Aug. 6, 2008). Although this may be a true statement, the charge did not sufficiently inform the jury of the mental state required for **conviction** of the charged offense. The charge provided the jury the definitions for intentionally and knowingly, but the jury was given no guidance on how to apply those definitions to its determination of Fulcher's guilt. The introductory paragraph of the charge told the jury Fulcher was charged with possession of methamphetamine without any reference to a *mens rea*. Paragraph I instructed the jury that the law provides an offense is committed if possession is intentional or knowing. Yet Paragraph III, the

application paragraph, commands the jury to find guilt for possession alone, without any requirement of a *mens rea*.

### *The State of the Evidence and Contested Issues*

The State was required to prove Fulcher intentionally or knowingly possessed an item and knew the item was methamphetamine. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). The State's chemist testified two items submitted to him contained trace amounts of methamphetamine. He testified a trace amount, not visible to the naked eye, was found on a broken light bulb. To conduct the test, he had to rinse the glass with water and test the resulting solution:

> A:    [by chemist] On State's Exhibit 7, I only rinsed two pieces of the glass in State's Exhibit No. 7, the broken glass, so I took out two of the pieces of glass and rinsed them for my analysis.
>
> Q:    [by prosecutor] Okay, and I'm assuming if you couldn't weigh it, once you tested it, it no longer exists?
>
> A:    The substances that I rinsed were consumed in the analysis, the portion that I analyzed.

The prosecutor continued with questioning about the mirror:

> Q:    Okay, and that's the same thing for the mirror?
>
> A:    Yes, there really wasn't anything for me to scrape off, to weigh, and so I didn't rinse it for my analysis, and it was consumed in my analysis.
>
> Q:    Do you remember what type of substance was in the mirror? Was it white, black, blue, or –
>
> A:    No, the only thing that I do [sic] was it was a residue. I don't have the color written down, what color it was.

The chemist's testimony about the appearance of the mirror and his testing of it was less than clear. However, the officer who seized the mirror testified a powdery residue was present on its surface.

The only additional item the State submitted for testing, the contents of a Sunkist bottle, tested negative for methamphetamine.

The State's evidence thus showed only a trace of methamphetamine on two items. The trace was not visible at all on the broken light bulb and the mirror contained a residue of unspecified appearance and too small to scrape off. "'[W]hen the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance.'" *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (quoting *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979)).

To prove Fulcher knew the substance on the mirror and light bulb was methamphetamine, the State presented evidence that she exhibited many signs associated with an abuser of methamphetamine and that she was under the influence of the drug when she was arrested. Deputy Price testified Fulcher had "strong signs" of a methamphetamine user, such as sores and blisters on her tongue and mouth and open sores on her arms and body. Deputy Johnson testified Fulcher also had burn marks on her lips, indicating she had smoked "methamphetamine or crack cocaine." He also testified Fulcher's purse contained receipts for the purchase of items that are used to manufacture methamphetamine. Deputies Price and Harrell testified Fulcher engaged in violent, emotional, and irrational behavior when she was arrested, including banging her head against the side and rear windows of the patrol car. Deputy Johnson testified Fulcher's eyes were dilated, which "indicates a stimulant is present inside the body, methamphetamine, cocaine or common stimulants."

The State also sought to prove Fulcher knowingly possessed methamphetamine with evidence that the items containing a trace of methamphetamine were associated with use of the drug. The chemist explained to the jury how drug abusers convert an ordinary incandescent light bulb into a pipe for smoking methamphetamine. Deputy Harrell testified a mirror is commonly used to facilitate the smoking of methamphetamine by using it as a base on which to "chop" the methamphetamine crystals.

Finally, the State attempted to show knowledge of the presence of methamphetamine through testimony that a drug-sniffing dog used during the search alerted to four additional locations in the vehicle. However, the dog handler testified the dog was trained to alert to many different controlled substances, not just methamphetamine. In fact, marijuana was found in one of the locations to which the dog alerted.

The evidence of Fulcher's past and current methamphetamine use could support an inference that she had knowledge the broken light bulb and the mirror contained at least a trace of methamphetamine. However, the inference holds only if the State demonstrated Fulcher knowingly possessed those items. "[P]ossession of the container in which the [controlled] substance is found is not, itself, sufficient to prove a *knowing* possession." *Joseph*, 897 S.W.2d at 377 (Baird, J., concurring). Deputy Harrell testified the light bulb was found in a blue canvas bag in the back of Fulcher's truck and that the bag also contained women's undergarments. The State did not present any other evidence connecting the bag or its contents to Fulcher. Fulcher testified she did not own the blue canvas bag, the clothing found in the bag was not hers, and she "did not recall" the mirror.[1]

---

[1]The majority opinion notes the mirror was found in an "open" glove box. However, the record does not disclose whether the mirror was visible in the glove box.

Fulcher and her husband both testified that earlier on the day of Fulcher's arrest, someone named "Nancy" had borrowed the truck to move some of Nancy's personal belongings.

The State clearly established two items found in Fulcher's vehicle contained trace amounts of methamphetamine. However, the evidence she knowingly possessed those items and she knew they contained methamphetamine was far from overwhelming. Fulcher's evidence joined issue on whether she intentionally or knowingly possessed methamphetamine, making the omission of the *mens rea* element from the charge more likely to result in harm.

### *The Jury Arguments and Trial Record Trial as a Whole*

The possibility of egregious harm resulting from the failure to properly instruct the jury would have been lessened had the attorneys argued to the jury that the *mens rea* was an element required for conviction.[2]  But that did not occur.

In voir dire, the prosecutor told the jury one time that it must prove Fulcher "unlawfully, intentionally or knowingly" possessed methamphetamine. The jury heard reference to the required mental state when the indictment was read. The prosecutor mentioned the *mens rea* element once in his opening statement to the jury. And, after the evidence closed, the judge read the charge to the jury.  These were the only times the jury heard any statement about the *mens rea*.

---

[2]*See and compare Allen v. State*, 253 S.W.3d 260 (Tex. Crim. App. 2008) (holding defendant was not egregiously harmed by failure to instruct jury that it must acquit if it had reasonable doubt as to whether victim consented to assault while noting that defense counsel had informed the jury of the correct burden in his closing argument), *and Olivas v. State*, 202 S.W.3d 137 (Tex. Crim. App. 2006) (holding error in failing to instruct jury that State had burden to prove deadly weapon issue beyond a reasonable doubt did not result in egregious harm where both State and defense counsel informed jury of correct burden and standard of proof during jury arguments), *with Green v. State*, 233 S.W.3d 72 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd)(holding defendant was egregiously harmed by application paragraph of charge that allowed jury to convict if codefendant committed offense without finding defendant guilty as a party, notwithstanding correct statement of law of parties in abstract portion of charge, where State argued to jury that defendant was guilty of murder based on codefendant's firing of fired fatal bullet without arguing culpability based on law of parties).

The State did not argue to the jury that it had proved knowing or intentional possession of methamphetamine. Instead, the prosecutor essentially told the jury that an "unknowing" possession was sufficient to convict. In his opening argument, he referred the jury to the "voluntary possession" definition of the charge, telling the jury that mere possession, presuming knowledge from length of time in the vehicle, was sufficient for conviction:

> I don't care if somebody else used the truck earlier in the day. Who cares about that? They drove, her and her husband, drove back in that truck all the way from there back to their house to take care of their kids. That truck was in their possession and under their control all during that time period, and then at sometime that evening the Defendant, by her own testimony, all by herself, drives that truck all the way back up here to Bandera County from San Antonio, a good hour drive, stopped and got some gas, got out there to English Crossing, was out there for some period of time. That's plenty of time to know what's going on and what's in your truck . . . .
>
> The charge there under page 2 says possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control. You possess stuff that's in your vehicle and you know about it, bottom line.

The prosecutor continued to emphasize mere possession and the voluntary possession definition in his closing, with no mention of the *mens rea* requirement:

> The law is, as the Judge has told you, possession means aware of her control of the thing for a sufficient time to permit her to terminate her control. It is actual care, custody, control or management. I don't know, but – but in the vehicle I own, if there's anything in there, I control it because I can pitch it out. If I see something in my vehicle and I think, "Hey, that's not mine. What is it?", what do we do? We check it out – right – especially if we loaned our car out to somebody, which, by the way, you only heard that from Ms. Fulcher and her spouse . . . .
>
> . . . .
>
> A lot of talk here about possession, a lot of talk about it, and I think the thing to focus on is this: If something is in your car, you have control over it. Why? Because it's in your car. Just like the CDs, the clothing, the floor mat, whatever is

in your car, you can do with it what you want; right?  It's in your car.  That is the definition of possession.

. . . .

. . . The only thing they are really arguing over is whether or not the stuff found in the truck was in her possession.  Page 1 of the charge, paragraph 2 [voluntary possession] , takes care of that right away.  She had the ability to control, manage, do anything she wanted with anything in that truck for at least several hours that night, even giving her the benefit of the doubt, even after it got back from whoever she borrowed it to . . . .

Fulcher's trial counsel never mentioned the *mens rea* requirement in his closing argument.  He made only an indirect reference when discussing the amount of methamphetamine discovered by the deputies:

Now, if there was 10 pounds of marijuana, 10 pounds of cocaine in the back seat, that's a deciding difference, but when you have a controlled substance that is under a gram, that according to the chemist, you couldn't even weigh it, couldn't even see it, you actually have care, custody, control and management over that, quote, "trace"?

Based on the trial court's instruction on voluntary possession and the prosecutor's arguments to the jury, the jury could easily have concluded it could presume Fulcher had knowledge of the controlled substances from the passage of time.

### *Conclusion*

A fair reading of the record reflects Fulcher's defense was that she did not own, was not aware of, and therefore did not possess the drugs with the requisite *mens rea*. The jury charge did not require the jury to find the *mens rea* be proven beyond a reasonable doubt before it could convict Fulcher, and the prosecutor's arguments suggested the jury could convict without finding Fulcher intentionally or knowingly possessed an item she knew to be methamphetamine. Considering the

charge as a whole, the state of the evidence, and the arguments of counsel, the failure to include the requirement of an intentional or knowing possession in the application paragraph of the jury charge vitally affected Fulcher's only defense. Because I believe this error in the charge egregiously harmed Fulcher, I would reverse the trial court's judgment and remand the cause for a new trial.


Steven C. Hilbig, Justice


Publish