Opinion issued July 8, 2010.

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 


 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 

 
 



NO. 01-09-00070-CR

 


 
 

 
 



DANTE BERNARD JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 


 
 

 
 
 



On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1140389



 



 

MEMORANDUM OPINION

          A jury found
appellant, Dante Bernard Jackson, guilty of the murder of Vincent “Derrell”
Joseph and sentenced him to fifty years’ confinement.  See Texas Penal Code Ann. § 19.02(b)
(Vernon 2003). We determine whether the evidence is legally sufficient to support
the conviction. Concluding that it is, we affirm. 

Background

          On the morning of November 2, 2007, Ivory
Christopher stood outside his house and watched Joseph’s car driving westbound
on Springhaven.  After the car stopped,
Christopher saw Jackson get out of the Buick that he was in, approach Joseph’s
car window, and begin talking to Joseph.  Christopher recognized Jackson because he had
seen him in the neighborhood twice before.  A blue Buick was parked next to Joseph’s car,
facing the opposite direction.  Christopher
walked back into his house. Approximately thirty seconds to one minute later, he
heard a gunshot.  He ran to the door and
looked outside. He saw Jackson walk around the front end of Joseph’s car,
carrying what appeared to be a “chrome firearm” downward at an angle by his
side.  Jackson then returned to the
passenger side of the Buick, and the car drove off.  Christopher decided to follow it.  He followed it for about four and half miles
while speaking with a 911 operator.  The
driver of the Buick turned into the Haverstock Hill apartments.  Because it was a gated complex, Christopher
could not follow it any further.  The car
did not have a license plate.  Christopher
returned to the crime scene and spoke with the police.  Three days later, Christopher positively
identified Jackson in a photo spread. 

Another witness
and neighbor, Billy Ray Miller, heard the gunshot that morning and ran outside.
 He saw a man run from Joseph’s car to
the Buick, hide something in his jacket, and get into the car.  He watched the car drive away.  Miller testified that the man he saw running
away “resembled” Jackson. 

Devan Topps,
another neighbor, knew Jackson socially.  About six weeks before Joseph’s death, Jackson
approached Topps and asked if he knew Joseph’s schedule.  Topps refused to answer the inquiry.  Jackson also asked Topps to “set Derrell up”
for him.  On the morning of the murder,
the sound of a gunshot awoke Topps.  He
went outside to Joseph’s car, found the engine running, and saw Joseph lying
inside.  At this point, another neighbor,
Edwina Parson, arrived, and she attempted to render first aid.

Parson also
had heard the gunshot and came out to investigate.  She entered the car and attempted to perform
CPR on Joseph.  She reached around his
head and felt a hole, and then wrapped his head in a towel. 

Houston Police
officer J.S. Hammerle investigated the crime scene.  There he found the internal components of a
shotgun shell.  He also found blood and
human tissue all over the interior of the car.  He testified that a shotgun barrel could be
cut as short as three inches, and a pistol grip could be created by cutting off
the stock.  A shotgun could also have a
layer of chrome applied to change its appearance.  Police recovered the Buick five or six days
after the murder when it was involved in an accident and abandoned, but they
did not recover the gun.

Another
investigator, Officer R. Martinez, testified that Christopher identified
Jackson in a photo spread, and that Miller had identified Jackson’s “physical
features” in a photo spread.  He
discovered that the Buick had been stolen the previous summer.  After the identifications from Miller and
Christopher, the police issued a warrant for Jackson and arrested him at the Haverstock
Hill apartments. 

The
assistant medical examiner, Pramod Gumpeni, M.D., testified that Joseph died of
a perforating shotgun wound to the head, which resulted in a skull fracture and
brain injuries.  He found stippling on
Joseph’s face, which is created by gunpowder that is ejected when the bullet
leaves the barrel.  The stippling found
here indicates that the shotgun was between one and six inches from Joseph’s head
when the gunman fired it.  The bullet
entered Joseph’s head near the center of his forehead, traveling left to right,
front to back, and slightly upward, and exited the back right side of his head.
 He testified that the path of the bullet
could be consistent with Joseph being shot while sitting in the driver’s seat
by someone standing outside the car. 




 

Sufficiency
of the Evidence

Jackson
contends the evidence is legally insufficient to sustain a murder conviction,
either as the principal actor, or as a party to the crime. 

A.      Standard
of Review 

In a legal
sufficiency review, we consider the entire trial record to determine whether,
viewing the evidence in the light most favorable to the verdict, a rational
jury could have found the accused guilty of all essential elements of the
offense beyond a reasonable doubt.  See Jackson
v. Virginia, 443 U.S.
307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); McClesky v. State, 224 S.W.3d 405, 409
(Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d).  This
standard of review applies to both direct and circumstantial evidence cases.  King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  The jurors are the exclusive judges of the
facts, the credibility of the witnesses, and the weight to give their
testimony.  Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  A jury is entitled to accept one version of
the facts and reject another, or reject any part of a witness’s testimony.  Id. Furthermore,
reconciliation of conflicts in the evidence is within the jury’s discretion—such
conflicts alone will not call for reversal if enough credible evidence exists to
support a conviction.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  “Each fact need
not point directly and independently to the guilt of the appellant, as long as
the cumulative force of all the incriminating circumstances is sufficient to
support the conviction.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).

B.      Murder

          Under the
Texas Penal Code, a person commits the offense of murder if the person
“intentionally or knowingly causes the death of an individual” or “intends to
cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual.” 
Tex. Penal Code Ann. §
19.02(b) (Vernon 2003).  Even if no eyewitness testifies to seeing
the defendant commit the crime, “the
State may prove the defendant’s identity and criminal culpability by either
direct or circumstantial evidence, coupled with all reasonable inferences from
that evidence.”  Gardner v. State, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). 

C.      Legal
Sufficiency of the Evidence

            Jackson complains that the evidence is legally insufficient
to show that he murdered Joseph.[1]  See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).  He specifically contends that no proof exists that he shot
Joseph.  Jackson correctly observes that
no witness saw the fatal shot being fired.  Christopher, however, saw Jackson talking to Joseph
before the murder and, a minute or two later, heard a shot fired and then saw Jackson
flee the crime scene holding what appeared to be a firearm.  Christopher testified that he followed the
Buick back to the Haverstock Hill apartments, where police later arrested
Jackson.  Topps testified that Jackson
sought assistance from Topps to “set up” Joseph in the weeks before the murder.
 Viewing the evidence in the light most
favorable to the jury’s verdict, the evidence shows that a rational trier of
fact could have found beyond a reasonable doubt that Jackson committed the
offense.  See Gardner, 306 S.W.3d
at 285–86; see also King, 895 S.W.2d at 703.  The jurors are the exclusive judges of the
credibility of witnesses and the weight to give their testimony, thus we must
defer to the jury’s reliance on the witnesses.  See id.


          Jackson
points out a contradiction in the testimony regarding the murder weapon:  Christopher said the gun he saw resembled a
handgun, not a shotgun. In addition, Jackson stepped into the passenger side of
the Buick, and someone else drove it away.  That driver was about three feet from Joseph.  Other testimony reveals that the police
discovered shotgun pieces at the crime scene.  The doctor performing the autopsy testified
that the wound was likely caused by a shotgun. 
The record supports a reasonable explanation for this discrepancy: that
the gun Jackson carried was a shotgun that was sawed off and plated in chrome, thus
resembling a handgun.  Christopher
testified that he was familiar with firearms, and the sound of the gunshot that
he heard was “almost between the sound of a handgun and a rifle.”  Christopher saw Jackson carrying the weapon
four or five seconds after he heard the second shot.  Given the medical examiner’s testimony that
the perpetrator fired the weapon within one to six inches of Joseph’s face, the
physical evidence supports the jury’s implied finding that Jackson fired the
weapon the witnesses saw Jackson carry away with him and that it was the murder
weapon.  With the other evidence
presented in this case, the jury was entitled to reconcile this conflict in the
testimony.  See Losada, 721 S.W.2d at 309. 

We hold that the evidence is legally
sufficient to sustain a murder conviction.

Conclusion

          We affirm the
judgment of the trial court.

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices
Jennings, Hanks, and Bland.

 

Do not publish.  Tex.
R. App. P. 47.2.

 











[1] Because we hold that the evidence is legally
sufficient to sustain Jackson’s murder conviction as the principal actor, we
need not address the sufficiency of the evidence relating to Jackson as a party
to the crime. See Tex.
Penal Code Ann. § 7.02(a)(2)
(Vernon 2003).