Affirmed and Memorandum Opinion filed August 10, 2006








Affirmed and Memorandum Opinion filed August 10, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00126-CR

_______________

 

KEVIN EDWARD CONNORS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 937,946

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant,
Kevin Edward Connors, appeals his conviction for murder.  In four issues, he
contends that the evidence is legally and factually insufficient to support his
conviction.  Because all dispositive issues are clearly settled in law, we
issue this memorandum opinion and affirm.  See Tex. R. App. P. 47.4 

I.  Background








In the
early morning hours of January 30, 2003, appellant drove a Sport Utility
Vehicle (SUV) toward the deceased, Adrian Heyne.  Heyne was thrown off the hood
and died as a result of injuries sustained when his head struck the pavement. 
According to appellant, he was leaving a local bar to avoid an altercation with
Heyne when Heyne charged the vehicle and leapt up onto the hood.  In contrast,
the State claimed that appellant intentionally struck Heyne with the vehicle,
and Heyne attempted to pull himself onto the hood to lessen the impact.  A jury found
appellant guilty of murder, and the trial court assessed punishment at
forty-five years= imprisonment.

II. Legal Sufficiency

In his
first two issues, appellant contends the evidence is legally insufficient to
support his conviction.  In reviewing the evidence for legal sufficiency, we
must view all evidence in the light most favorable to the verdict to determine
whether a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005).  We
consider all evidence when determining legal sufficiency, including admissible
and inadmissable evidence, and the same standard of review is applied to direct
and circumstantial evidence.  See Johnson v. State, 967 S.W.2d
410, 411B12 (Tex. Crim.
App. 1998); King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995). 

A person commits murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an
individual.  TEX. PEN. CODE ANN. ' 19.02(b)(1)-(2) (Vernon 2003).  AA person is criminally responsible if
the result would not have occurred but for his conduct, operating either alone
or concurrently with another cause, unless the concurrent cause was clearly
sufficient to produce the result and the conduct of the actor clearly
insufficient.@  TEX. PEN. CODE ANN. ' 6.04(a) (Vernon 2003).








Appellant argues scientific evidence conclusively
established that Heyne propelled himself onto the hood of the vehicle. 
Therefore, appellant contends that a rational jury could not have concluded
beyond a reasonable doubt that appellant knowingly or intentionally caused
Heyne=s death by
striking him with the SUV.

Two of the State=s experts
testified regarding the type of injuries expected in automobile/pedestrian
collisions.  The pedestrian would likely sustain bone fractures if the vehicle
was traveling more than fourteen miles per hour.  If the vehicle was traveling less
than twenty-five miles per hour, a pedestrian would be knocked over in the
direction the vehicle is traveling or to the side.  If the vehicle was
traveling from twenty-five to thirty-five miles per hour, a pedestrian would be
flipped onto the hood.  If the vehicle was traveling more than fifty miles per
hour, a pedestrian would be flipped onto the top or trunk of the vehicle or
thrown over the vehicle.  Because Heyne did not sustain bone fractures from the collision,
the experts agreed that the vehicle was traveling less than fourteen miles per hour at the time
of impactCa speed insufficient to flip Heyne onto the hood. 

However,
when presented with hypothetical scenarios by the State, both experts agreed
that it was possible for a pedestrian struck by a vehicle traveling at less
than fourteen miles per hour to push up onto the hood to avoid greater impact,
be carried along by the vehicle for a few seconds, and then be thrown off the
hood when the driver turns sharply or slams on the brakes.  When presented with
hypothetical scenarios by appellant, the experts also agreed that the same
result could occur if the pedestrian was not struck but aggressively leapt onto
the hood of the vehicle.  Thus, the scientific evidence is consistent with both
the State=s and appellant=s explanations. 








In
addition to the scientific evidence, the State presented testimony from three
witnesses.  Heyne=s romantic partner was in the parking lot of the bar with
Heyne shortly before his death.  She testified that she saw the SUV stopped at
the entrance to the bar with its lights on and engine running.  Appellant and
Heyne exchanged words at another bar approximately one hour earlier.  Fearing
another altercation between the two parties, she pleaded with Heyne to get into
his car.  Heyne ignored her pleas and walked toward the SUV.  When he came
within about four feet of the vehicle, appellant accelerated and struck Heyne
with the front of the SUV.  Appellant then Aslammed@ on his brakes, and Heyne flew off
the hood.  

A second
witness was in the parking lot of the bar waiting for a taxi before Heyne=s death.  The witness testified that
Heyne told him to Ago get help@ and Ago get the bouncer.@  He saw the SUV stopped at the
entrance of the bar with its headlights on.  He turned toward the bar to get
help when he heard tires Apeeling out.@  He turned back around and saw the SUV hit Heyne, throwing
him over the top of the vehicle.  The incident happened too quickly for Heyne
to move out of the vehicle=s path.  The witness chased the SUV, but the driver did not
stop.

A third
witness was appellant=s friend and a passenger in the SUV the night in question. 
He testified that Heyne was running toward the SUV and appellant A[hit] the gas@ when Heyne was about ten to fifteen
feet away.  He further testified that, although the SUV did not strike Heyne,
Heyne Apushed off away from the vehicle,
like he was trying to get out of the way.@

An
investigating officer testified that he found brake and acceleration marks at
the crime scene.  Another officer testified that the SUV had been washed and
detailed the day after Heyne=s death.  The officer also testified that appellant gave
evasive answers to the police when asked about his whereabouts the night of the
death.  








Viewing
the evidence in the light most favorable the State, we conclude that the
evidence is legally sufficient to support appellant=s conviction.  The scientific
evidence is consistent with the State=s explanation that Heyne was struck
by the SUV and pushed up onto the hood to lessen the impact of the collision. 
Other evidence shows that after arguing with Heyne earlier that evening,
appellant drove to the same bar as Heyne and sat stationary at the entrance to
the parking lot with the lights on and engine running. Witnesses testified that
appellant struck Heyne with the SUV, fled the scene, and had the SUV washed and
detailed the next day.  Although the witness accounts differ with respect to some
details, and one witness testified that the SUV did not strike Heyne, we must defer to the jury=s reconciliation
of the conflicts, contradictions, and inconsistencies in the evidence.  Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).  A rational jury could have concluded
appellant caused Heyne=s death by striking him with the SUV with the knowledge or
intent to kill, or that he struck Heyne with the SUV in an act clearly
dangerous to human life with the intent to cause serious bodily injury.  Accordingly, we
overrule appellant=s first two issues.

III.  Factual Sufficiency

In his third and fourth issues, appellant contends the
evidence is factually insufficient to support his conviction.  In reviewing the
evidence for factual sufficiency, we must view all the evidence in a neutral
light and A. . . set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust.@  Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  The evidence is
factually insufficient if (1) it is too weak to support the finding of guilt
beyond a reasonable doubt, or (2) the contrary evidence is so strong that a
reasonable jury could not find guilt beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).     

In support of his factual insufficiency claim, appellant
refers to the testimony of a security officer who witnessed the earlier
argument between appellant and Heyne in the parking lot of the other bar. 
Heyne took off his shirt and began walking toward appellant=s vehicle. 
Appellant accelerated and left the parking lot.  The security officer did not
see a physical confrontation but did not witness the entire argument.








Two other witnesses testified regarding the previous
altercation. The passenger in appellant=s SUV testified
that Heyne hit appellant in the jaw.  After he was struck, appellant and his
passengers got in the SUV and left as quickly as they could.  Heyne=s romantic partner
testified that she saw Heyne tapping on the door or window of the SUV as
appellant was trying to leave.  She also heard Heyne ask appellant why he would
not get out and fight.

Appellant also refers to the passenger=s testimony
concerning the incidents causing Heyne=s death.  The
passenger testified that appellant drove into the parking lot of bar and
stopped as soon as he saw Heyne.  Heyne began making stretching movements like
he was preparing to fight.  He took off his shirt and began running toward the
SUV.  The passenger told appellant to AGo, go, get on
it.  Just get out of here@ and Apunch it.@  Appellant then A[hit] the gas and
swerv[ed] away.@  Appellant said something about Heyne
chasing the SUV, and the passenger again told appellant to Ago, go, go.@ He further
testified that the SUV was detailed the next day because it got stuck in the
mud earlier that evening and was extricated by a wrecker.

Appellant=s ex-girlfriend testified that he and his
two passengers stopped at her house the night of Heyne=s death, and all
three were caked in mud.  She is a medical assistant, so appellant asked her to
examine his jaw, which appeared swollen.  Appellant and his passengers talked
about Heyne Acharging@ the SUV, but they
all appeared calm.  They did not indicate there was any reason to call the
police or an ambulance.  

Appellant also notes that all of the witnesses testified
that they had been drinking that night, and Heyne=s blood-alcohol
content was .27, near a stage the medical examiner described as Astuporous.@  Appellant
further points out that the crime scene was left unsecured for approximately
twenty minutes, and an investigating officer indicated it was possible for the
acceleration and brake marks to have been made by a different vehicle.  








Viewing the evidence in a neutral light, we find factually
sufficient evidence to support appellant=s conviction. 
Appellant=s actions in fleeing the scene and having the SUV
detailed the next day are inconsistent with his explanation that Heyne=s death was an
accident caused by Heyne=s own attempt to vault onto the hood of
the vehicle.  Although the passenger in the vehicle and appellant=s ex-girlfriend
gave other explanations for appellant=s behavior, the
jury could have reasonably disbelieved the testimony from appellant=s friends.  We
must not substitute our own findings for the jury=s finding; the
jury acts as the sole judge of witness credibility and the weight of the
evidence.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000).  Here, the jury could have reasonably believed that appellant
intentionally or knowingly caused Heyne=s death by
striking him with the SUV, or that he struck Heyne with the SUV in an act clearly dangerous to human
life with the intent to cause serious bodily injury.  The State=s evidence is not too weak to support
a finding of guilt beyond a reasonable doubt, and the contrary evidence is not
so strong that it would prevent a rational jury from finding guilt beyond a
reasonable doubt.  Accordingly, appellant=s third and fourth
issues are overruled.  

The judgment of the trial court is affirmed. 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
August 10, 2006.

Panel consists of Justices Hudson,
Fowler, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).