Affirmed and Memorandum Opinion filed December 4, 2007








Affirmed and Memorandum Opinion filed December 4, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00911-CR

____________

 

ANDRE JACURRE CHADWICK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1048850

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant Andre Jacurre Chadwick guilty of
murder and assessed his punishment at fifteen years= confinement in
the Texas Department of Criminal Justice, Institutional Division, and a $2,500
fine.  In two issues, appellant contends the evidence is legally and factually
insufficient to prove he committed murder.  We affirm.

Factual
Background








On the evening of November 30, 2005, police were dispatched
to an apartment complex at 22720 Imperial Valley, in Harris County, Texas.  In
a two-story apartment within the complex, the police found the body of the
complainant, Jeffery Smallwood, lying at the top of the stairwell.  Smallwood
had been shot three times at close range.  His pants pockets appeared to have
been gone through and emptied.  Fired 9-millimeter shell casings were found
near the body and downstairs.  A broken fake fingernail was also found next to
the body.  Downstairs, in the kitchen, police found a box of 9-millimeter
bullets.  Police also found a green purse in the downstairs bathroom with a
9-millimeter bullet in it.  Appellant=s cell phone was
found on the couch in the living room.

The apartment was leased to Kenisha Tatum, who lived there
with Christi Portis and Lillian Bee.  However, Tatum, Portis, and Bee were not
at the apartment when police arrived.  Two men, Reneke Scott and Sebastian
Henderson, were there and were interviewed.  They were cooperative during the
interviews, and voluntarily went with a detective to give statements.  Tatum
and Bee eventually arrived at the apartment, without Portis, and falsely told
the police they had just returned from Brenham, where they had left Portis. 
After questioning, they eventually changed their story, and gave police sworn
statements about what happened.  At some point, the police also obtained sworn
statements from Portis and from Willie Briscoe, another person who had been at
the apartment that night.  

At trial, the jury heard evidence that Tatum=s apartment was a
regular gathering place for a group of friends, which included appellant,
Scott, Henderson, and Smallwood.  Appellant had been dating Bee for about two
weeks before Smallwood was killed.  On the evening of November 30, appellant,
Smallwood, Scott, Henderson, and Briscoe, who was Tatum=s cousin, were
shooting dice for money at the kitchen table.[1] 
Tatum=s and Portis=s two young daughters
were also in the apartment.  Portis and Tatum returned from a shopping trip
around 6:30 or 7:00 p.m., and the dice game eventually broke up after that.  As
the game ended, some of the men, including Scott and Henderson, left.  Portis
and Smallwood were in the kitchen, where Smallwood was counting some money he
had won in the game.  








Appellant, Bee, and Tatum were in the living room.[2] 
Smallwood stepped outside and Bee went upstairs to take a shower.  In the
living room, appellant told Tatum that something bad was going to happen. 
Tatum went into the downstairs bathroom and closed the door.  Appellant and
Smallwood went upstairs.  At some point, Portis went to retrieve her daughter,
who was near or on the bottom of the stairway.  As Portis and Briscoe stood
near the bottom of the stairway, gunshots rang out at the top of the stairs. 

The apartment=s upstairs level
lacked electricity and was lit by a single lamp connected to a downstairs power
outlet.  Bee was finishing her shower when she, too, heard the gunshots. 
Immediately afterward she saw appellant turn off the upstairs lamp, enter the
bathroom, and ask if she was okay.  She responded that she was, and appellant
left.

Appellant then went downstairs and was confronted by
Portis, who suspected him of firing a 9-millimeter handgun in the apartment
because he had done so about two weeks earlier.  Appellant seemed as though he
could not get the words out to respond to her.  As Portis and appellant argued,
appellant appeared nervous, and was pacing back and forth.  Tatum testified
that, at one point, she heard appellant tell Portis, Awe have to clean
that up.@  Appellant then
called someone on the phone, and told the person there was a Amajor problem@ and to come to
the apartment.  








Bee threw on only a t-shirt and ran out of the upstairs
bathroom.  As she went down the stairs, she had to step around Smallwood=s body.  She did
not see him bleeding.  She ran out to Tatum=s green Ford
Explorer, and told Portis that Smallwood was Alaying upstairs.@ Tatum, Portis,
and their daughters also got into the Explorer.  Portis argued with Bee about
letting appellant back into their apartment after shooting his gun out the
window two weeks earlier.  The women drove to a nearby gas station, and
then decided to return to the apartment, after agreeing to lie to the police
about their whereabouts.[3] 
Scott and Henderson were there, and Scott told them Smallwood was on the steps,
bleeding.  The police had not arrived, so Tatum told Scott to call the police. 
The women then left again to try to find Smallwood=s mother, but were
unsuccessful, and so they returned to the apartment.  Portis had a traffic
warrant and was on felony probation, however, so she did not return with the
others.[4] 


Appellant never returned to the apartment, and the police
were unable to locate him to interview him for a statement.  Based on the
statements of Portis, Bee, and Tatum, which were corroborated by the statements
of the others and the presence of appellant=s cell phone at
the apartment, the police developed appellant as a suspect.  Portis, Bee, and
Tatum all identified appellant in a photospread.  

Following the shooting but before his arrest, appellant had
contact with both Bee and Portis.  Bee testified that he asked her how she felt
about him, and he was apologetic and remorseful.  When appellant saw Portis, he
asked her if she was mad at him, and said he was sorry about what happened.  In
the context of that conversation, Portis concluded that appellant was
apologizing for the events on November 30, 2005.








Tests for gunshot residue were conducted on Bee, Tatum,
Scott, and Henderson.  Bee, Scott, and Henderson had no residue on their hands
or clothing.  Tatum=s hands were negative for gunpowder
particles, but her pants returned a positive result.  The steering wheel of
Tatum=s vehicle also
returned a positive result.  The concentration of gunpowder particles was
higher on the steering wheel than on Tatum=s pants.  A
forensic chemist testified that a person holding a gun that had been fired at
some point and not cleaned could have touched the steering wheel, and the
gunshot residue could then transfer to the driver=s pants.  He also
testified that the driver=s hands could be clean if they did not
touch the same place where the gunshot residue was left on the steering wheel.

The jury was authorized to convict appellant of murder as
either a principal or as a party to the actions of Tatum, Briscoe, or an
unknown person.  See Tex. Penal
Code '' 7.01, 7.02(a)(2), 19.02(b)(1), 19.02(b)(2).  The jury
found appellant guilty and assessed his punishment at fifteen years= confinement and a
$2,500 fine.

Analysis
of Appellant=s Issues

1.       The
Applicable Standards of Review

In evaluating the legal sufficiency of the evidence, we
must view the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002).  This standard of review applies to cases involving both
direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we consider all evidence presented at trial,
we may not re‑weigh the evidence and substitute our judgment for that of
the jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
The jury is the exclusive judge of the credibility of witnesses and of the
weight to be given their testimony, and it is the exclusive province of the
jury to reconcile conflicts in the evidence.  Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998).








When conducting a factual‑sufficiency review, we view
all of the evidence in a neutral light.  See Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006); Cain v. State, 958 S.W.2d 404, 408
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996).  We may set the verdict aside if (1) the evidence is so weak that
the verdict is clearly wrong and manifestly unjust, or (2) the verdict is
against the great weight and preponderance of the evidence.  Watson, 204
S.W.3d at 414B15 (citing Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000)).  However, while we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that a court should not reverse a verdict it disagrees with
unless it represents a manifest injustice even though supported by legally
sufficient evidence).  Thus, while we are permitted to substitute our judgment
for the jury=s when considering credibility and weight
determinations, we may do so only to a very limited degree.  Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). 

2.       The
Evidence is Legally Sufficient

In his first issue, appellant contends the evidence is
legally insufficient to prove that he murdered Smallwood, because there was no
direct testimony that he shot Smallwood, there was no evidence tying the murder
weapon to him, and the circumstantial evidence established only that he was
present at the time the gunshots were fired.  Because several others also were
present at the time of the shooting, appellant contends, his presence alone is
insufficient to prove he murdered Smallwood.  

Appellant is correct that no one testified they saw him
with a gun that night or that they saw him shoot Smallwood.  However, ample
circumstantial evidence was presented to support the jury=s verdict. 
Smallwood had won money at a dice game in which appellant participated, and
after the game concluded, appellant told Tatum that Asomething bad was
going to happen.@  Shortly after that, gunshots rang out at
the top of the stairs.  Smallwood=s pockets appeared
to have been rummaged through and emptied.  








Additionally, the physical evidence showed that whoever
shot Smallwood did so from behind him, upstairs.  At the time Smallwood was
murdered, the only people upstairs were Smallwood, appellant, and Bee.  Bee was
finishing her shower when she heard the gunshots.  Immediately afterward,
appellant turned off the only upstairs lamp and went into the bathroom Bee was
using and asked her if she was okay.  Bee responded that she was and appellant
left.  The jury could have reasonably determined that appellant turned off the
lamp to hide Smallwood=s body from Bee=s view before he
went into the bathroom. 

The evidence also showed that everyone else was downstairs
when the murder occurred.  Tatum was in the downstairs bathroom, Portis and
Briscoe were near the bottom of the stairs, and Scott and Henderson had left
the apartment.  Shortly after the gunshots, appellant came downstairs and
Portis confronted him about the gunshots.  Appellant was nervous and unable to
speak clearly.  He paced back and forth and told Portis they needed to Aclean that up.@  Then he called
someone on the phone and told that person there was a major problem at the
apartment and to come over.  Appellant then fled the apartment, leaving his
cell phone on the living room couch where he had told Tatum that something bad
was going to happen before the shooting.

Evidence tying appellant to the gun used included the
evidence that Smallwood was shot from behind with a 9-millimeter handgun at the
top of the stairway.  Appellant was known to carry a 9-millimeter handgun and
had discharged it in the apartment in the recent past.  Additionally, Tatum and
Bee testified that appellant had driven Tatum=s vehicle that
day.  Consistent with the forensic chemist=s testimony, the
jury could have reasonably concluded that appellant was in possession of the
9-millimeter gun he had recently fired, and when he drove Tatum=s vehicle,
gunpowder residue from the gun was transferred from appellant=s hands to the
steering wheel.  Later, when Tatum got in the vehicle to drive away with the
other women and the girls, the residue on the steering wheel transferred to
Tatum=s pants, but,
because she did not touch the part of the steering wheel that had residue on
it, Tatum did not get residue on her hands.  In addition to there being
no residue on Tatum=s hands, there were no positive residue
findings on the hands or clothes of Bee, Scott, or Henderson. 








Moreover, Tatum, Portis, and Bee all gave sworn statements
to the police, which were corroborated by the sworn statements of Henderson,
Scott, and Briscoe and the presence of appellant=s cell phone at
the scene, and which led police to develop appellant as a suspect.  Each of the
women identified appellant as the suspect from the photospread they were
shown.  And, after the murder, appellant interacted with both Bee and Portis in
a way that suggested he was remorseful and apologetic for the murder.

Thus, the evidence of appellant=s words and
conduct, his connection to a 9-millimeter gun and proclivity towards using it,
the absence of gunshot residue on the other witnesses= hands, the
testimony and identification of the other witnesses, appellant=s status as the
only person on the apartment=s second level in a position to kill
Smallwood, his motive to kill Smallwood for losing money in the dice game, and
his flight from the apartment constitutes legally sufficient evidence from
which the jury could have found beyond a reasonable doubt that appellant was
guilty of Smallwood=s murder as a principal.[5] 
We overrule appellant=s first issue.

3.       The
Evidence is Factually Sufficient

In his second issue, appellant contends the evidence is
factually insufficient to prove that he murdered Smallwood, because the guilty
verdict rests on the testimony of three women with criminal histories who fled
and lied to the police.  Additionally, appellant points out that gunpowder
residue was found on the steering wheel of Tatum=s car and her
pants, a green purse containing a 9-millimeter bullet was found in the bathroom
Tatum was using, a box of bullets was located in the kitchen, and part of a
fake fingernail was found near Smallwood=s body.  Thus,
appellant contends, the greater weight of the evidence is contrary to the jury=s verdict.








Appellant=s factual sufficiency issue primarily
challenges the credibility of the witnesses and emphasizes other evidence
which, according to appellant, suggests that others are guilty of Smallwood=s murder.  He
first argues that Tatum, Bee, and Portis were not credible witnesses because
they lied to the police and have criminal histories.  However, unless the
available record clearly reveals a different result is appropriate, we must
defer to the jury=s determination concerning what weight to
give contradictory testimonial evidence, because resolution often turns on an
evaluation of credibility and demeanor of the witnesses= testimony.  See
Watson, 204 S.W.3d at 414; Johnson, 23 S.W.3d at 8.  Although we may
disagree with the jury=s conclusions, we may do so only Ato a very limited
degree.@  See Marshall,
210 S.W.3d at 625.  

Appellant also argues that the gunpowder residue found on
Tatum=s vehicle=s steering wheel
and pants suggests that she shot Smallwood.  As discussed above, however,
testimony showed that this residue could have been transferred to the steering
wheel by the shooter and then transferred to Tatum=s pants when she
drove the vehicle away.  Thus, the positive test results did not necessarily
suggest that Tatum shot Smallwood. 

Next, appellant argues there were other 9-millimeter
bullets found in a box in the kitchen and a 9-millimeter bullet found in a
purse in the downstairs bathroom where Tatum was last known to be.  However,
the evidence showed that appellant was known to own a 9-millimeter gun and had
previously discharged it in the apartment.  There was also evidence that
appellant frequently stayed at the apartment and, thus, could have been the
owner of the 9-millimeter bullets.  Moreover, Portis testified that she knew
nothing about the bullets in the kitchen, and Tatum testified that she knew
nothing about the bullets in the kitchen or the purse found in the downstairs
bathroom.  Thus, this evidence does not point to another person=s guilt.








Appellant also points to the presence of a broken, fake
fingernail near Smallwood=s body.  From this he infers that a female
must have shot Smallwood.  However, the fingernail was also near a pile of
laundry, some of which was under and next to Smallwood=s body, and there
was evidence, including photographs, that the apartment was generally in a state
of Acomplete disarray.@  Therefore, the
fingernail could have been there before Smallwood=s murder.  

Appellant also argues that the women=s flight from the
scene of the murder evidences their own guilt contrary to the jury=s verdict. 
Although flight from a crime can demonstrate a consciousness of guilt,
appellant fails to acknowledge that he, too, fled the scene.  In fact,
appellant was the only person present at the shooting who did not eventually
cooperate with the police.

Reviewing all of the evidence both for and against the jury=s verdict, as
discussed in this and in the previous section, we cannot conclude that the
proof of guilt is so obviously weak or is otherwise so greatly outweighed by
contrary proof as to render appellant=s conviction
clearly wrong or manifestly unjust.  A reasonable jury could have resolved the
issues contrary to appellant=s view of the evidence.  Therefore, we
hold that the evidence is factually sufficient to support the jury=s verdict.  We
overrule appellant=s second issue.

Conclusion

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment rendered and Memorandum
Opinion filed December 4, 2007.

Panel consists of Justices Yates,
Fowler, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Portis testified that Reneke Scott=s cousin, whose name she did not know, was also there
at one point.





[2]  It is unclear from the record exactly when and for
how long the three were in the living room.  Portis testified Bee was alone
when she got up from the living room couch to shower, while Bee testified
appellant had been sitting on the couch with her, where she had been sleeping. 
Tatum testified that, before she went into the downstairs bathroom, she was
sitting on the couch with appellant.





[3]  Tatum testified that she knew appellant had shot
Smallwood, but she lied about her whereabouts because she was afraid for her
own safety.  Portis and Bee testified that they agreed to lie to explain why
they were not there when the police arrived and why Portis was not with them
when they returned to the apartment.  Portis and Bee testified the lie was
Tatum=s idea, while Tatum testified it was a Agroup idea.@ 
Tatum also admitted that she had a prior criminal history, including probation
for forgery, a conviction for theft, and a fine for theft by check.





[4]  Portis also testified to a prior theft conviction.





[5]  After being instructed that it could convict
appellant either as a principal or a party to the offense of murder, the jury
returned a general verdict of guilty.  The evidence is legally sufficient if it
supports either theory.  See Rabbani v. State, 847 S.W.2d 555, 558 (Tex.
Crim. App. 1992).  Because we determine that the evidence is both legally and
factually sufficient to support appellant=s
conviction as a principal, we do not reach his arguments concerning the legal
and factual sufficiency of the evidence of guilt as a party.