Opinion issued July 1, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00339-CR

———————————

Brandon Darrell Wilson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 260th District Court

Orange County, Texas*



Trial Court Case No. D-080345-R (Count Two)

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Brandon Darrell Wilson of robbery and sentenced him to
40 years’ confinement in prison and a $5,000 fine.  See
Tex. Penal Code Ann. § 29.02
(Vernon 2003).  On appeal, Wilson
challenges the legal and factual sufficiency of the evidence to support his
conviction because his co-conspirator, who initially told police that Wilson
was involved in the robbery, testified at trial that he lied to the police
about Wilson’s involvement with the crime.

          We
affirm.

BACKGROUND

          Just
after midnight on May 22, 2008, Wilson went to a gas-station convenience store
in Orange County.  Rana Tamang was
working alone as the night manager, talking on the phone to a friend.  Wilson took an energy drink from the cooler,
walked to the counter, asked for Marlboro cigarettes, pulled a wrapped object
from his waistband, put it on the counter, and demanded money.  Tamang, who believed the wrapped object to be
a gun, told his friend he was being robbed, fumbled with the cash register, and
then gave Wilson money and a package of Marlboro cigarettes.  These events were recorded on video by a
surveillance camera.  Wilson fled and
jumped into the bed of a dark-colored Ford pickup truck that was waiting
outside for him.  Wilson’s roommate,
Kelly Mancina, gave the police a statement in which he said he was driving the
truck, but he recanted at trial.

          Officer
L. Kemp was working as a patrol officer for the Orange County Sheriff’s
Department, and she responded to the broadcast about the robbery.  Tamang had called his store manager, who came
to the convenience store and showed Kemp the surveillance video.  The video recording showed that the robber
had facial hair and wore a baseball cap. 
Kemp immediately recognized the robber, although she did not know his
name.  The store was unable to make a
copy of the video recording at that time, so Kemp asked the manager to pause
the video recording so she could take a still picture of the robber with her mobile
phone.  Then she sent the picture to
other officers to solicit help in identifying the robber.

          Officer
E. Shannon, who was working as a patrol officer for the City of Pinehurst in
Orange County, was with City of Orange Police Officer J. Warner when Warner
received the robber’s photo from Kemp. 
Shannon recognized the robber as Wilson, because he had dealt with
Wilson on other occasions.  In addition,
Shannon testified that the truck that Tamang described as the getaway vehicle
matched the truck that Shannon knew Wilson drove.  Shannon went to his office, got a picture of
Wilson, and gave it to Warner.

          Later
that morning, hours after the robbery, Officer J. Davis, a patrolman for the
City of Orange Police Department, was working as an investigator on the day of
the robbery.  He compiled a photographic
lineup, including a recent photograph of Wilson, and showed it to Tamang.  Davis testified that Tamang identified Wilson
without hesitiation.  Tamang also
testified that he had identified Wilson from a photographic lineup, and Tamang
identified Wilson at trial, saying he had no doubt that Wilson was the robber,
despite the fact that Wilson appeared different at trial because his face was
clean shaven.

          City
of Orange Police Detective R. Estrello testified that he had dealt with Wilson
in the past and that he immediately recognized him upon viewing the
surveillance video.  He said, “No doubt
in my mind that was him.”  Detective
Estrello and Sergeant Jefferson went to Wilson’s last known address, where his
mother told them that Wilson was living with a man named Tony Evans.  Estrello recalled that Wilson was with Evans
the last time he dealt with him.  Evans
told Estrello that Wilson moved in with Kelly Mancina and his family.  Estrello and Jefferson went to Mancina’s
mobile home and found a truck that matched Tamang’s description of the getaway
truck.  They also saw Wilson walk up,
with a freshly shaved face and cuts on his scalp from where he had recently
shaved his head.  Estrello said that the
shoes Wilson wore matched those worn by the robber in the convenience store’s
surveillance video.  Estrello knocked on
the door, and Wilson identified himself. 
Estrello attempted to arrest Wilson on outstanding warrants, but Wilson
fled on foot, running through neighboring yards and hiding in tall grass.  Approximately 14 hours after the robbery,
Estrello arrested Wilson.

          Estrello
testified that he spoke with Mancina for over an hour during a recorded
interview.  During that interview,
Mancina admitted that he was driving the getaway truck and that he knew that
Wilson was going to rob the convenience store. 
Mancina told the police that they had been driving around and needed
money for gas, and Wilson decided to rob the convenience store when his efforts
at panhandling proved fruitless.  Mancina
told the police that Wilson used Mancina’s son’s toy gun, wrapped in a sock, to
threaten Tamang.  Mancina also said that Wilson
shaved his head and face that morning, after the robbery.  Finally, Mancina told the police where they
could locate the sock-wrapped toy gun, and the police later found it where
Mancina said it would be.

          Before
trial, Mancina signed a note in which he recanted his earlier statements to
police.  At trial, he again recanted his recorded
police statement.  Mancina admitted
driving the truck but denied that Wilson committed the robbery.  Instead, Mancina said, his accomplice was a
“white guy,” whom Mancina did not remember and could not describe.  Mancina claimed that he was under the
influence of illegal drugs when he gave his police statement and that he
implicated Wilson because Wilson owed him money.  Mancina testified that Wilson always had his
head shaved and was at home on the night of the robbery.  However, Mancina also admitted lying about
the case.

          K. C.
Breshears, a criminal investigator with the Orange County District Attorney’s
office, testified that Mancina told him before trial that he was afraid to
testify against Wilson because of Wilson’s connections to the Aryan Brotherhood
gang.  According to Breshears, Wilson
wrote the note recanting Mancina’s statements to police, and Mancina signed it
because he was afraid of Wilson.  Mancina
said he did not recall what he said to Breshears, but he denied that he feared
Wilson or that Wilson wrote the letter recanting Mancina’s earlier statements.

After Mancina again stated that the
handwriting in the original note was his, the prosecutor asked him to write it
again from dictation.  The prosecutor
read the note to Mancina.  The
handwriting on the two documents did not match, and Mancina misspelled several
words while writing the note in court.

Wilson’s sister testified that she
saw Wilson the day before the robbery and Wilson had a clean-shaven head at
that time.  In addition, she was not
aware of any connection Wilson had to the Aryan Brotherhood gang, and she
testified that Wilson drank cola, not energy drinks, and he never smoked Marlboro
cigarettes.  Similarly, Wilson’s mother
denied that he was connected to the Aryan Brotherhood gang, drank energy
drinks, or smoked the brand of cigarettes taken from the convenience
store.  She testified that she saw Wilson
approximately two weeks before the robbery and that he was clean shaven at that
time.  She also testified that Wilson
commonly wore a bandana over his head.  

          The
trial court instructed the jury on both aggravated robbery and robbery, and the
jury convicted Wilson of robbery.  After
learning of Wilson’s prior convictions for burglary of a habitation, possession
of cocaine, and tampering with a governmental record, the jury sentenced Wilson
to 40 years in prison and a fine of $5,000.

Standard of
Review

          In two issues, Wilson challenges the legal and
factual sufficiency of the evidence to support his conviction.  In particular, Wilson contends that Mancina’s
trial testimony, in which he stated he previously lied about Wilson’s
involvement in the robbery, is too weak to support the verdict, especially in
light of the testimony from his sister and mother that he had shaved his hair
and face before the robbery.

Legal Sufficiency

When evaluating the legal
sufficiency of the evidence, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005).  The standard is
the same for both direct and circumstantial evidence cases.  King v.
State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).  If we determine
that the evidence is legally insufficient, we must render a judgment of
acquittal.  Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Factual Sufficiency

In a factual sufficiency review, we
view all of the evidence in a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Under the first prong of Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have acquitted.  See Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the factfinder’s
resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the trial court’s judgment.  See id.
 In conducting a factual sufficiency
review, we must also discuss the evidence that, according to the appellant,
most undermines the judgment.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

In reviewing the factual
sufficiency of the evidence, appellate courts should afford almost complete
deference to a factfinder’s decision when that decision is based upon an
evaluation of credibility.  Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008).  In a bench
trial, the trial court judge is in the best position to judge the credibility
of a witness because he is present to hear the testimony, as opposed to an
appellate court that relies on the cold record.  Id.; see Johnson v. State, 571 S.W.2d 170,
173 (Tex. Crim. App. 1978) (“The jury, or trial judge in a trial before the
court, is the sole judge of the credibility of the witnesses and may accept or
reject any part or all of the testimony given by State or defense witnesses.”).
 The factfinder may choose to believe
some testimony and disbelieve other testimony.  Lancon,
253 S.W.3d at 707.

ROBBERY

A person commits theft if he
“unlawfully appropriates property with intent to deprive the owner of
property.”  Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2009).  A person commits robbery if, “in the course of
committing theft” and “with intent to obtain or maintain control of the
property,” he “intentionally or knowingly threatens or places another in fear
of imminent bodily injury or death.” See Tex. Penal Code Ann. § 29.02(a)(2)
(Vernon 2003).

Analysis

          Wilson
argues that this is a case of mistaken identity.  Wilson contends that the evidence is legally
insufficient because, at trial, Mancina testified that he lied about Wilson’s involvement
because Wilson owed him money.  In
addition, Wilson points to trial testimony from his mother, sister, and Mancina
that he was seen without facial hair before the robbery.  

Tamang, the sole live eyewitness to
the robbery, identified Wilson from a photographic lineup less than 24 hours
after the robbery.  Tamang identified
Wilson at trial, saying he had no doubt that Wilson was the robber, despite the
changes in his facial hair.  “It is well
established that a conviction may be based on the testimony of a single
eyewitness.”  Davis v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.]
2005, no pet.) (citing Aguilar v. State,
468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). 
The jury could have believed Tamang, and his testimony alone would be
legally sufficient to support the verdict. 
However, this is not a case where the jury had to rely on the testimony
of a single eyewitness, because the robbery was recorded by the convenience
store’s surveillance camera and two law enforcement officers testified that
they recognized Wilson from the video recording of the robbery.  Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational jury could have found
beyond a reasonable doubt that Wilson committed robbery as charged.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Drichas,
175 S.W.3d at 798. 

          As to
factual sufficiency, Wilson argues that the verdict was “overwhelmingly against
the weight of the evidence so as to be unjust. 
The evidence just doesn’t match the verdict.”  Wilson essentially contends that the trial
testimony of his mother, his sister, and Mancina was more credible than that of
the State’s other witnesses. 

It is axiomatic that the trier of
fact is the sole judge of the credibility of the witnesses and must resolve
inconsistencies in the evidence.  See Johnson, 571 S.W.2d at 173; see also Saldana v. State, 287 S.W.3d
43, 60 (Tex. App.—Corpus Christi 2008, pet. ref’d) (“[W]hen a witness recants
prior testimony, it is up to the fact finder to determine whether to believe
the original statement or the recantation.”); Maldonado v. State, 887 S.W.2d 508, 509 (Tex. App.—San Antonio
1994, no writ) (“Just because the . . . witness recants incriminating testimony
does not mean the evidence is insufficient.”). 
The jury was in the best position to determine who was more credible
based on their testimony and demeanor in court, and, on appeal, we will defer
to the jury’s assessment of credibility under these circumstances.  See Lancon, 253 S.W.3d at 705.  

As to its credibility
determination, in addition to observing the testimony and demeanor of the
witnesses, the jury was able to compare Mancina’s written recantation with the
writing sample he provided during trial and to observe Mancina’s demeanor in
the video recording of his earlier statement to police.  As to Wilson’s identity argument, the jury
was able to watch the robbery, which was recorded by the store’s surveillance
camera, and compare Wilson’s appearance at trial with the video recording and
the photograph that Kemp took from it.  

Moreover, we note that the facts
that Wilson relies upon were not facts that the State was required to prove in
order to support his conviction for robbery. 
It is irrelevant whether Wilson drank energy drinks or smoked Marlboro
cigarettes; these facts are not elements of the charged offense.  See Tex. Penal Code Ann. §§ 29.02(a)(2),
31.03(a) (Vernon 2003 & Supp. 2009).  Viewing all the evidence in a neutral light,
we conclude that the evidence of Wilson’s guilt was not so weak that the
verdict is clearly wrong and manifestly unjust and that the verdict is not
against the great weight and preponderance of the evidence.  See Johnson,
23 S.W.3d at 11.  

We hold that the evidence is both
legally and factually sufficient, and we overrule Wilson’s two issues.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











*
          Originally
appealed to the Ninth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Gov’t Code Ann. § 73.001 (Vernon
2005).  We are unaware of any conflict
between precedent of the Ninth Court of Appeals and that of this Court on any
relevant issue.  See Tex. R. App. P.
41.3.