**Opinion issued July 30, 2015**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-14-00345-CR

_____

**BRANDON DERRAIL EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case No. 13CR1338**

---

## MEMORANDUM OPINION

A jury convicted appellant Brandon Derrail Evans of unlawful possession of a firearm by a felon, *see* TEX. PENAL CODE § 46.04(a), and the court assessed punishment at five years in prison. *See id.* § 12.34 (third-degree felony

punishment). In a single issue on appeal, Evans contends that the evidence was insufficient to support the jury's verdict. We affirm.

## Background

At approximately 10:00 p.m. on May 17, 2003, Texas City Police Department Corporal D. Grandstaff responded to an anonymous tip about three trespassers in the parking lot of an apartment complex, which was in an area that recently had experienced numerous convenience store robberies and automobile break-ins. The trespassers were identified only as "black males" and "suspicious persons" who did "not belong there." Corporal Grandstaff drove through the parking lot with his "alley" lights activated, and he saw three black men sitting in a parked car. One man was in the front passenger seat, and two men were in the back seat. Nobody was in the driver's seat. Appellant Brandon Derrail Evans was seated in the back, behind the driver's seat.

The man in the front passenger seat looked at Corporal Grandstaff and then turned to look toward the floorboard. The two men in the back were bent down, but they "popped up" and then bent down again twice in quick succession. Corporal Grandstaff later advised another officer that the men in the back had been reaching toward the floorboard.

Corporal Grandstaff contacted Texas City Police Officer R. Johnston, who lived at the apartment complex and served as a "courtesy officer," monitoring

suspicious activity when it arose. Although Officer Johnston recognized all the apartment residents by sight, when he looked at the men in the car he did not recognize them.

One passenger began to get out, but Corporal Grandstaff ordered him to get back in the car. Because he smelled marijuana as he approached, Corporal Grandstaff began to detain all three passengers so that he could safely search the car. Texas City Police Officer J. Clement then arrived to assist in detaining the men and searching the vehicle.

Officer Clement removed Evans from the car and asked if he lived at the apartment complex. Evans responded that he did not live there, but his uncle did. However, Evans could not identify his uncle by name or say where his apartment was located.

Officer Clement spotted a gun on the floorboard where Evans's feet had been. The gun was partially hidden by a glove and a bag, but the officer testified that he could see it clearly with only the aid of a flashlight. At trial, he described the gun as a chrome or steel .357 revolver, which had a filed-off serial number and which was loaded with "five hollow .38 special rounds."

Upon searching the rest of the car, the policemen also found several pairs of gloves, a ski mask, and two hooded sweatshirts. One of the hooded sweatshirts was found on the back seat on the passenger side. In the pocket of this sweatshirt was

3

another handgun. In addition, the officers found a "marijuana roach" on the front floorboard and a "dime-sized or quarter-sized Ziploc baggy that appeared to have synthetic marijuana inside."

Evans was charged with the unlawful possession of a firearm by a felon. At trial, he stipulated that he had previously been convicted of a felony offense and that it had been less than five years since his release from confinement for that offense.

Officer Grandstaff testified that he determined that the owner of the car was Sharlene White, who told him that her son Germane had used it that night. Neither Sharlene nor Germane were in the car when the officer approached it in the parking lot. Sharlene said that Germane had been at a convenience store near the apartment complex and that the car had been towed.

The jury found Evans guilty of the charged offense, and the court assessed punishment of five years in prison.

**Analysis**

In a single issue on appeal, Evans contends that the evidence is legally insufficient to support the jury's verdict. In particular, he argues that the evidence was insufficient to link him to the handgun found in the car.

When evaluating a legal-sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether any

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The standard is the same for both direct and circumstantial evidence cases. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.–Houston [1st Dist.] 2012, pet. ref'd).

To prove the offense of unlawful possession of a firearm by a felon, the State must show that the accused was convicted previously of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from community supervision, parole, or mandatory supervision, whichever date is later. TEX. PENAL CODE § 46.04(a); *James v. State*, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Evans stipulated that he had been convicted previously of a felony and the fifth anniversary of his release from confinement for that felony had not yet occurred.

"Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to

permit him to terminate his control." TEX. PENAL CODE § 6.01(b); *see James*, 264 S.W.3d at 218. "If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must link him to the firearm." *Williams v. State*, 313 S.W.3d 393, 397 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *accord James*, 264 S.W.3d at 218–19. The evidence must establish that the defendant's connection with the contraband was more than fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Among the many possible factors that we may consider to evaluate whether the evidence supports a finding that there is a link between the defendant and the contraband are whether: (1) the contraband was in plain view; (2) the defendant was the owner of the location where the contraband was found; (3) the defendant was in close proximity and had ready access to the contraband; (4) the defendant's conduct indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (5) the defendant had a special connection or relationship to the contraband; (6) the place where the contraband was found was enclosed; (7) contraband was found on the defendant; (8) the defendant attempted to flee; and (9) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *James*, 264 S.W.3d at 219. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. The absence of various links does not

constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James*, 264 S.W.3d at 219.

On appeal, Evans challenges only the sufficiency of the evidence to prove that he possessed the gun found on the floorboard. He concedes that he was in the car and the gun was within his reach. But he argues that there was no evidence as to how long he had been in the car or whether he could have seen the gun in the dark. He also contends that it was possible that other occupants of the car had access to the gun. Finally, he devotes the bulk of his analysis to explaining why the other links that the Court of Criminal Appeals has identified as relevant are absent in this case.

*Factors 1 and 3: The gun was found in plain view where Evans's feet had been before he got out of the car.* The first and third factors weigh in favor of the jury's verdict. Officer Clement testified that the gun was in plain view—that is, it was not completely hidden in a bag or completely obscured by other objects placed on top of it. In addition to his testimony, two photographs of the floorboard as the officers found it were entered into evidence at trial. The jury was free to rely on both the testimony and the photographic evidence to determine that the gun was visible. While the jury was free to consider the fact that it was dark and how that may have contributed to whether Evans could see the gun, there was sufficient

evidence upon which the jury could have relied to determine that the gun was in plain view. *See Adames*, 353 S.W.3d at 860; *Wiley*, 388 S.W.3d at 813. Likewise, Officer Clement testified that the gun was located where Evans's feet had been before he got out of the car. This was also depicted in the photographs, which showed the gun on the floorboard behind the driver's seat. Evans does not deny that the gun was within his reach.

*Factor 4: Corporal Grandstaff saw Evans repeatedly ducking and reaching toward the floorboard.* Corporal Grandstaff testified that he had his alley lights on when he entered the parking lot and that he was able to see Evans and the other two men repeatedly duck down and look out the window toward him. He testified that this behavior was unusual and made him suspicious. Officer Clement testified that Grandstaff told him he had seen the men in the car reaching toward the floorboard. Evans contends that his ducking movements could be explained as a response to the shining of the bright alley light toward the car. However, it was for the jury to resolve any such dispute about the significance of the evidence. Because there was evidence upon which the jury could have relied in concluding that Evans made furtive gestures, we conclude that this factor supports the jury's verdict.

*Other circumstantial evidence supports the jury's verdict.* In addition, in this case, the State offered significant other circumstantial evidence upon which the jury could have relied in concluding that Evans's connection to the gun was not

merely fortuitous. *Evans*, 202 S.W.3d at 161. Corporal Grandstaff testified that the apartment complex was in an area that had recently experienced numerous convenience store robberies and automobile break-ins and that there was a convenience store across the street. It was late at night, and the passengers of the car were neither apartment residents nor visitors. There was no connection shown between Evans and the other passengers and the owner of the car, who believed her car had been towed. Although it was a warm night in Galveston County, two hooded sweatshirts, a ski mask, and three pairs of gloves were found in the passenger area of the car. Marijuana, a controlled substance, was found in the car and the odor of it emanated from the car when Corporal Grandstaff approached. Finally, the officers found two loaded handguns in the car. The one that was within Evans's reach was loaded and bore no serial number because it had been filed off. Corporal Grandstaff testified that it is illegal for anyone to possess a firearm with a filed-off serial number. Considering this circumstantial evidence as a whole, the jury could have reasonably concluded that Evans's connection to the gun was not merely fortuitous. *See id.*

Finally, we are not persuaded by Evans's argument that the evidence is insufficient because of the absence of evidence of some of the other links that the Court of Criminal Appeals has previously identified. Our analysis is not one of mathematical computation and the absence of various links does not establish his

innocence. *See Hernandez*, 538 S.W.2d at 13; *James*, 264 S.W.3d at 219. We conclude that a rational jury could have found beyond a reasonable doubt that Evans possessed the gun that was found on the rear floorboard of the car. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Merritt*, 368 S.W.3d at 525. We overrule Evans's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).