**Opinion issued October 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00965-CR

————————————

**ELMER ALVARADO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1381604**

---

## MEMORANDUM OPINION

Appellant Elmer Alvarado was indicted for the offense of Super-Aggravated

Sexual Assault of a Child (under 6 years old). The jury found Alvarado guilty of

the lesser charge of Indecency with a Child, and Alvarado was sentenced to 5

years' confinement. Alvarado appeals, contending that the evidence is insufficient to support the judgment. We affirm.

## Background

On February 16, 2013, five-year-old Anna went to her aunt Gloria's house so that she could go to a birthday party with Gloria's granddaughter, Heather.[1] After the party, Anna spent the night at Gloria's house. Anna, Heather, Gloria, and Gloria's husband, Alvarado, all slept in the same bed together. Alvarado slept to the far left, with Anna at his side, then Heather, and finally Gloria to the far right.

During the night, Anna woke up upon feeling Alvarado's hand under her pants and underwear. For roughly "seven Mississippis," Anna felt Alvarado's hand touching inside her "middle part." Alvarado's hand was moving, and then Anna felt Alvarado scratch her. Anna moved away by waking up Gloria and asking to trade spots on the bed. After trading spots, Anna went back to sleep without saying anything to Alvarado or to Gloria about what she felt.

The next night, Anna was back at home with her mother, Rita. Rita was helping Anna wash herself in the bath, but Anna did not want her mother to touch her pelvic area. Rita had never known Anna to act that way, so after the bath, Rita asked Anna if someone had touched her. With a shocked expression, Anna replied, "yes." Anna went on to tell her mother that Alvarado touched her under

---

[1] We refer to the complainant, her mother, and the complainant's young cousin by the pseudonyms "Anna," "Rita," and "Heather," respectively.

her underwear and "scratched" her in her "cookie"—a term Anna used to refer to her vaginal area.

The next day, Rita took Anna to the doctor to examine an injury to Anna's foot that occurred during the birthday party. While there, she also asked the doctor to examine Anna's vaginal area, but she offered no explanation as to why. The doctor did not find any physical indications of trauma. When the doctor asked Anna if anyone had touched her, Anna denied ever being touched inappropriately.

Rita did not report the incident to the police or Child Protective Services until after talking with school personnel. Officer V. Caster with the Houston Police Department's Juvenile Sex Crimes division spoke with Rita and Anna, prepared an offense report, and set up an interview with the Children's Assessment Center ("CAC"). Officer Caster also spoke with Alvarado, who voluntarily met with Caster at her office. An investigator specializing in interviewing children later talked with Anna at the CAC and testified that Anna provided a clear and consistent explanation of who, where, and what happened to her.

## Discussion

Alvarado contends that insufficient evidence supports his conviction. Particularly, Alvarado maintains that there is insufficient evidence to conclude that Alavarado knowingly or intentionally touched Anna because Anna testified that she thought Alvarado was asleep during the incident.

3

## A.    Standard of Review

When evaluating the legal sufficiency of the evidence in jury trials and in bench trials, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

On appeal, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We therefore resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991), and "defer to the [trier of fact's] credibility and weight determinations." *Marshall v. State* 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). To the extent that the record contains evidence supporting conflicting inferences, we presume that the jury resolved conflicts in favor of its verdict. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 326).

**B.    Applicable Law**

In order to obtain a conviction for the offense of indecency with a child by touching, the evidence must show beyond a reasonable doubt that a defendant (1) knowingly and intentionally (2) engaged in sexual contact (3) with a child (4) younger than 17 years of age (5) who was not the defendant's spouse. TEX. PENAL CODE ANN. § 21.11(a)(1).  In addition to the knowing or intentional *mens rea* requirement established by section 21.11(a)(1), the Texas Penal Code further requires a voluntary act as an element of guilt. TEX. PENAL CODE ANN. § 6.01(a) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.").  "[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state." *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993) (quoted by *Whatley*, 445 S.W.3d at 166).

> "Voluntariness," within the meaning of Section 6.01(a), refers only to one's own physical body movements.  If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary.

*Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003) (citations omitted).

**C.    Analysis**

Alvarado argues that because Anna testified that she thought Alvarado was sleeping when he touched her, a rational jury could not have concluded that Alvarado acted knowingly or intentionally. Though Alvarado contends that there is insufficient evidence to prove that he knowingly or intentionally touched Anna, his arguments might also be understood to question whether the conduct at issue was voluntary. *See Whatley*, 445 S.W.3d at 165–67 (whether appellant feigned sleep or was in fact asleep when he inappropriately touched complainant raised issue of voluntariness).

Anna testified at trial that she thought Alvarado was asleep when he touched her. Asked why she did not say anything to Alvarado when she awoke to find him touching her, Anna responded, "[b]ecause I didn't woke him up." The inquiry continued:

State:    You didn't wake him up. Do you think he was asleep?

Anna:    Yes.

State:    How do you think his hand got under your pants?

Anna:    I do not know.

    . . .

State:    So, you're just guessing, huh?

Anna:    Yes.

6

> State:      Okay. 'Cause did you look at him while he was doing that?
>
> Anna:      No.
>
> State:      So, you don't know if his eyes were open or not, do you?
>
> Anna:      [Nodding].

Following up on this line of questioning during cross examination, defense counsel asked Anna, "when [Alvarado] touched you, did you think it was an accident in the beginning?" Anna agreed. On the basis of such testimony, Alvarado argues that the only rational conclusion to be drawn by the jury was that Alvarado was in fact asleep, as Anna believed, and his actions were therefore neither intentional nor knowing. We disagree.

Viewing the evidence and reasonable inferences therefrom in the light most favorable to the verdict, there was sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that Alvarado's actions were both intentional or knowing and voluntary. Though Anna—who was five years old at the time of the offense and seven years old at the time of trial—testified that she thought Alvarado was asleep during the incident, her testimony does not disprove voluntariness or the requisite mental state because a rational jury could infer that Alvarado was feigning sleep. *Whatley*, 445 S.W.3d at 165–67; *Langley v. State*, No. 12-14-00095-CR, 2015 WL 2394144, at *4 (Tex. App.—Tyler May 20, 2015, no pet. h.) (not designated for publication) ("Although Jane Doe's testimony

7

showed that she believed Appellant was sleeping, this does not negate intent, as it can be inferred from the circumstances that Appellant was feigning sleep"). In *Whatley*, the child complainant testified that she believed the appellant was asleep on three different occasions when he inappropriately touched her under her clothes. *Whatley*, 445 S.W.3d at 161–65. On an appeal challenging the legal sufficiency of the evidence, the Court of Criminal Appeals observed that "[a] reasonable jury could have inferred from [complainant's] testimony that as a child she was trying to reconcile her love for her 'father,' as well as her more general desire for a father figure, with his abuse of her and, in doing so, convinced herself that he was unaware of his actions." *Id.* at 167. Thus, notwithstanding the complainant's testimony, the Court concluded that the evidence and reasonable inferences therefrom supported the jury's guilty verdict. *Id.*

Here, as in *Whatley*, notwithstanding the fact that Anna testified that she thought Alvarado was asleep when he touched her, a reasonable jury could have instead believed that Alvarado merely feigned sleep. This is particularly true in light of Anna's testimony that she did not see whether Alvarado's eyes were open or closed, that she did not hear him snoring, and that Alvarado placed his hand under her pants and underwear and proceeded to "scratch" her vaginal area. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe

all, some, or none of the testimony presented by the parties."); *Whatley*, 445 S.W.3d at 167 (though child complainant testified that she thought appellant was asleep when he inappropriately touched her, jury could have reasonably inferred that appellant was awake, but feigning sleep, and that his conduct was voluntary).

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack, Justice Bland, and Justice Huddle.

Do not publish. Tex. R. App. P. 47.2(b).